RAINIER VIEW ASSOCIATES, a Washington limited partnership; Kurtis R. Mayer and Pamela Mayer, dba/Mayer Built Homes, Plaintiffs–Appellants,

v.

UNITED STATES of America, acting Through the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant–Appellee.

No. 86–3685.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1987.

Submission Vacated June 1, 1987.

Resubmitted March 7, 1988.

Decided June 6, 1988.

---

Warren J. Daheim, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Seattle, Wash., for plaintiffs-appellants.

Mack A. Player, Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before FLETCHER, BOOCHEVER and NORRIS, Circuit Judges.

PER CURIAM:

In this action for declaratory relief, we consider a question of contract interpretation concerning the method by which the United States Department of Housing and Urban Development ("HUD") may alter its method of calculating annual rent adjust-

ments for government-assisted housing projects. The district court granted summary judgment in favor of the United States and against Rainier View Associates (Rainier), a developer and owner of Section 8 housing. We reverse.

I

Around 1974, pursuant to the enactment of Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f, HUD implemented a program to encourage the private sector to build rental housing for low-income people. HUD solicited private developers to submit bids to construct specialized housing at specific locations. Successful bidders were awarded Housing Assistance Payment (HAP) contracts, either directly or through local public housing agencies as the contract administrators. Under the HAP contract, the developer/owner collects a portion of the contract rent directly from the tenant, while the remainder is paid to the owner by HUD through the contract administrator.

Section 8(c)(2)(A) requires that the HAP contract provide for periodic adjustment of the maximum monthly rent (and thus of HUD's contribution) "to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula." 42 U.S.C. § 1437f(c)(2)(A). Section 8(c)(2)(C) places a limitation on the permissible adjustments so that they "shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary." 42 U.S.C. § 1437f(c)(2)(C).

Section 1.9 of the HAP contract at issue in this case contains provisions designed to carry out the mandates of section 8(c)(2):

. . . . .

b. *Automatic Annual Adjustments.*

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the ba-

sis for their determination will be published in the Federal Register....

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

.    .    .    .    .

d. *Overall Limitation.* Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

On April 9, 1980, Rainier executed a HAP contract for a term of twenty years with the Housing Authority of the City of Bremerton (Bremerton). In 1981 and 1982, Bremerton granted Rainier annual rent adjustments for its Section 8 housing project based upon HUD's published Automatic Annual Adjustment Factors (AAAFs). However, in 1983, Bremerton refused to grant Rainier the annual adjustment that would have resulted from the application of the AAAFs published by HUD in the *Federal Register* on January 20, 1983. Instead, Bremerton insisted that Rainier conduct a rent study of the housing in the project's vicinity in order to justify any adjustment in the maximum rent allowance. Rainier refused and commenced this action in the district court, seeking a declaratory judgment that under the HAP contract, it was entitled to an automatic annual adjustment based on the latest published AAAFs.

The district court granted summary judgment for HUD, ruling that as a matter of law the HAP contract unambiguously permits HUD (in this case through its agent, Bremerton) to withhold the annual rent adjustment outlined in section 1.9b when such an adjustment would violate the overall limitations provision in Section 1.9d. Rainier appealed.

II

A grant of summary judgment is reviewable *de novo. Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). Federal law controls when interpreting a government contract. *Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983). The interpretation of a contract presents a mixed question of law and fact. When, as here, the district court's decision is based on analysis of the contract language, the decision is reviewed de novo. *Miller v. Safeco Title Ins. Co.,* 758 F.2d 364, 367 (9th Cir.1985).

Section 8(c)(2)(A) allows adjustments based either on market surveys, "or, if the Secretary determines, on the basis of a reasonable formula." Rainier contends that in Section 1.9b of the HAP contract HUD *elected* to rely exclusively on the AAAF formula process, instead of on an individualized "market survey" method. By switching to an individualized "market survey" method, Rainier argues, HUD reneged on its obligation. Rainier explains that the "overall limitation" in Section 1.9d is a limitation on HUD's calculation of the AAAFs. Accordingly to Rainier, the clause may *not* be construed as providing HUD with an independent basis for refusing to apply the published AAAFs. Rainier argues that by invoking the "overall limitation" provision as an independent basis for adjusting the maximum allowable rent, even though the latest published AAAFs show that a greater adjustment is indicated, HUD is seeking to nullify its election.

HUD counters that Section 1.9d of the HAP contract authorizes the government to limit adjustments that would occur through the use of the AAAF formula when use of that formula would result in a

material difference between the rents charged for assisted and comparable unassisted housing. HUD argues that the language of Section 1.9d, which provides, "Notwithstanding any other provisions of this contract, adjustments as provided in this Section shall not result in material differences between rents charged for assisted and comparable unassisted housing units ...," authorizes HUD to override the formula process for determining rent adjustments.

HUD misconstrues the role of the overall limitation. The overall limitation provision in section 1.9d, consistent with its statutory analog, Section 8(c)(2)(C), is clearly a limitation on the calculation of the formula used to adjust rents, not an independent basis for making annual rent adjustments. Under the statute, HUD could choose either a market survey method (described in the first clause of Section 8(c)(2)(A)) *or* a formula method (described in the second clause of Section 8(c)(2)(A)). In the contract, HUD elected the formula method. Having made its choice, HUD cannot now change its mind. The overall limitation provision of the statute and the contract permit HUD to adjust the formula factors in light of market conditions, but it does not permit HUD to abandon entirely the formula method it chose and to adjust rents solely on the basis of a market survey. HUD's interpretation of the overall limitation provision would render the formula method authorized by the statute and elected in the contract a nullity. It would make all rent adjustments depend on the market survey method.

Not only is HUD's interpretation of Section 1.9d of the contract foreclosed by the contract language, it is inconsistent with the role of the overall limitation provision described in the regulations. 24 C.F.R. § 888.204 (1987) provides that

"[i]f the application of the Annual Adjustment Factors results in rents that are substantially lower than rents charged for comparable units not receiving assistance ..., in the area for which the factor was published or a portion thereof, and it is shown to HUD that the costs of operating comparable rental housing have in-

creased at a substantially greater rate than the Adjustment Factors, the HUD Field Office will consider establishing separate or revised Automatic Annual Adjustment Factors for that particular area."

Thus, HUD's own regulations interpret the overall limitation provision in the statute the same way we interpret the overall limitation provision in the contract—as permitting adjustment of the AAAFs, not abandonment of the formula method whenever application of the formula would result in a disparity between section 8 and other rents.

In sum, the contract clearly elects the formula method, one of two statutorily authorized methods for calculating rent adjustments. The overall limitation provision just as clearly authorizes modifications of the formula applied to keep assisted rents in line with market rents. What the overall limitation provision does *not* do is permit HUD to switch from one method to another. That is clear from the contract language, and is consistent with the statutory language and HUD's own regulations interpreting the statute. We thus hold that the contract unambiguously support Rainier's interpretation. Accordingly, the district court erred in denying Rainier's motion for summary judgment and in granting summary judgment in favor of HUD.

Rainier's request for its attorneys' fees on appeal pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should be considered by the district court.

The judgment of the district court is

REVERSED.