**Alfred J. KATZ, in his capacity as General Partner of Hollywood Associates Limited Partnership, Plaintiff–Appellant,**

v.

**Henry CISNEROS, in his capacity as Secretary of the United States Department of Housing and Urban Development, and Executive Office of Communities and Development and Housing Allowance Project, Inc., Defendants–Appellees.**

No. 91–1483.

United States Court of Appeals,
Federal Circuit.

Feb. 15, 1994.

E. Peter Parker, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief was Michael S. Gardener. Of counsel was Tracy A. Miner.

Mary K. Doyle, Attorney, Department of Justice, of Washington, D.C., argued for defendants-appellees. With her on the brief were Stuart M. Gerson, Assistant Attorney General, A. John Pappalardo, United States Attorney and Barbara C. Biddle, Attorney.

Linda Morley, Housing Allowance Project, Inc., of Springfield, Massachusetts, represented the defendants-appellees.

Before MAYER, LOURIE and RADER, Circuit Judges.

MAYER, Circuit Judge.

Alfred J. Katz, in his capacity as General Partner of Hollywood Associates Limited Partnership (Hollywood Associates), appeals the July 3, 1991, order of the United States District Court for the District of Massachusetts, dismissing its plea for mandamus and transferring its claims for declaratory judgment, breach of contract, breach of federal common law duty, third party beneficiary of contract, and quantum meruit to the Court of Federal Claims. We reverse and remand.

### Background

The Section 8 Moderate Rehabilitation Program of the United States Housing Act of 1937 was enacted to "aid[ ] low-income families in obtaining a decent place to live and [to] promot[e] economically mixed housing...." 42 U.S.C. § 1437f(a). The Section 8 Program is administered by the Department of Housing and Urban Development (HUD) through Public Housing Agencies (PHAs), with whom HUD contracts to carry out the program at the local level. Pursuant to its contract with HUD, and with the approval of HUD, a PHA seeks proposals from private developers who wish to participate in the program. The PHA then enters into an Agreement to Enter into a Housing Assistance Payments (AHAP) contract with selected developers. The AHAP contract provides that upon successful completion of a project, the developer or project owner will enter into a Housing Assistance Payments (HAP) contract with the PHA.

Both the AHAP and the HAP contracts contain provisions setting out the amount of contract rent, which represents the total amount of rent payable to the project owner, and is the sum of rent paid by a tenant family and rent paid by the PHA on the family's behalf. 24 C.F.R. §§ 813.102, 882.-102. Contract rent is calculated in accordance with HUD regulations, and is based on the project owner's costs of acquiring, owning, managing and maintaining the rehabilitated units. *Id.* § 882.408. While the project owner is responsible for obtaining the

necessary financing to carry out these functions, he may include the monthly amortization cost of such financing in the calculation of the contract rent. *Id.* § 882.408(c).

Following the execution of either the AHAP or the HAP contract, the PHA is entitled to adjust the amount of contract rent for specified reasons, for example, to reflect actual costs of rehabilitation, *id.* § 882.-408(d)(2), or to correct errors in computing the base and contract rents, in order to comply with HUD regulations, *id.* § 882.-408(d)(1)(v). HUD regulations also provide that after the completion of the rehabilitation, the PHA "must then establish the Contract Rents as provided in § 882.408 which will be subject to reduction based on a post audit." *Id.* § 882.507(c).

For the purpose of their motions before the district court, the parties did not dispute the following facts. In 1985, Housing Allowance Project, Inc., the Executive Office of Communities and Development (EOCD),[1] and HUD approved Hollywood Associates' proposal to rehabilitate existing housing stock and to provide 176 low-income rental units in Springfield, Massachusetts. Hollywood Associates then secured a conditional commitment from BayBank Valley Trust for a loan of $6,600,000 at an annual interest rate of 12% for the 15-year loan period. With this commitment, Hollywood Associates entered into an AHAP contract with Housing Allowance. The AHAP contract set forth contract rents based on the proposed cost of rehabilitating and operating the project, including the terms of the financing Hollywood Associates expected to obtain from BayBank. After the AHAP contract was executed, Hollywood Associates learned that it could obtain financing through the Commonwealth of Massachusetts Teller Bond Program at a base interest rate of 9.25%. To obtain this rate, however, it had to pay initial costs, including origination points, letter of credit fees, and other credit and legal fees. It purchased the Hollywood Project and obtained financing through the Teller Bond Program.

After the renovation of the Hollywood Project was complete, Housing Allowance inspected the project and determined that the work had been carried out in accordance with the AHAP contract. These two parties therefore entered into a HAP contract with the approval of EODC and HUD. Hollywood Associates secured tenants to occupy the project and Housing Allowance began paying the contract rents that had been specified in the AHAP contract and subsequently in the HAP contract.

In December 1988, HUD conducted an audit of all Section 8 projects administered by EOCD and Housing Allowance in Springfield, Massachusetts, and in April 1990 informed those two entities that the contract rents being paid to Hollywood Associates were too high. This conclusion was based on HUD's determination that its regulations required the contract rents to be based on the actual 9.25% interest rate Hollywood Associates obtained from the Teller Bond program. HUD ordered Housing Allowance to reduce the contract rents paid to Hollywood Associates and to recover all overpayments within 12 months.

Hollywood Associates challenged HUD's interpretation of the regulations governing the calculation of contract rents. It asserted that the up-front costs incurred to obtain the lower base rate should be factored in to produce an "effective" interest rate of 11.-28%. At that rate the amount of the contract rents it is entitled to receive under the HAP contract would not be affected. Hollywood Associates filed suit in the district court after administrative appeals failed.

In its complaint before the district court, Hollywood Associates set out a plea for mandamus (Count I) and for a declaratory judgment (Count II), and claims for breach of federal common law duty (Count III), breach of contract (Count IV), third party beneficiary of contract (Count V) and quantum meruit (Count VI). It also moved for a preliminary injunction against all the defendants. HUD challenged the jurisdiction of the district court and moved to dismiss. The court de-

---

1. The Executive Office of Communities and Development is a non-profit state agency located in Boston, Massachusetts, and is charged with the responsibility of administering the Section 8 Program.

nied Hollywood Associates' motion for a preliminary injunction and dismissed the demand for mandamus, but it transferred the remaining claims to the United States Court of Federal Claims.[2]

The district court held that the Court of Federal Claims has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1),[3] because Hollywood Associates' claims 1) are against the United States, 2) seek relief in excess of $10,000, and 3) are founded on a government contract. It then analyzed whether one of the four sources asserted by Hollywood Associates confers concurrent jurisdiction on the district court.

First, the court rejected the contention that it had federal question jurisdiction under 28 U.S.C. § 1331. It thought that while the interpretation of a federal statute and regulations is at issue, the case is founded in contract and is within the exclusive jurisdiction of the Court of Federal Claims. The district court also rejected Hollywood Associates' argument that section 1404(a) of the Housing Act confers jurisdiction because it found no applicable waiver of sovereign immunity. Similarly, the court saw no jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, because it believed an adequate remedy exists in the Court of Federal Claims. Finally, it held that the Mandamus Statute, 28 U.S.C. § 1361, is not satisfied because Hollywood Associates has an adequate remedy short of mandamus—again the breach of contract suit in the Court of Federal Claims. Hollywood Associates filed an interlocutory appeal in this court in accordance with 28 U.S.C. § 1292(d)(4).

## Discussion

Hollywood Associates must show that the district court has subject matter jurisdiction and that HUD has waived its sovereign immunity to be sued in this circumstance. *Far West Fed. Bank, S.B. v. Director, Office of Thrift Savings,* 930 F.2d 883, 887 (Fed.Cir.

1991); *see also United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). It proffers several theories to satisfy its burden; we address only one because it is sufficient.

Hollywood Associates asserts that the district court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." HUD responds with the argument that prevailed in the district court that federal question jurisdiction does not exist because Hollywood Associates' action against it is based on a contract. It says contracts between the government and private parties routinely refer to federal law and the Court of Federal Claims routinely interprets it in resolving contract claims.

■■■ Regardless of the characterization of the case ascribed by Hollywood Associates in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction. *Livingston v. Derwinski,* 959 F.2d 224, 225 (Fed.Cir.1992) (citing *Williams v. Secretary of the Navy,* 787 F.2d 552, 557 (Fed.Cir.1986); *Chemical Eng'g Corp. v. Marlo, Inc.,* 754 F.2d 331, 333 (Fed.Cir. 1984)). For reasons discussed below, we disagree with HUD's contention that the essence of Hollywood Associates' suit is contractual and that money damages are the appropriate relief. Even where a case is contractual, however, the presence of issues which require the interpretation of federal law and regulation necessarily give rise to federal questions. *See Conille v. Secretary of Housing and Urban Development,* 840 F.2d 105, 109 (1st Cir.1988) ("It is well established that cases involving the rights and obligations of the United States or one of its agents under a contract, entered into pursuant to authority conferred by federal statute, are governed by federal law."). The district court has subject matter jurisdiction under

---

2. The United States Claims Court was renamed the Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506 (1992).

3. In its order, the district court cited the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which confers jurisdiction on the district courts for claims against the United States where the amount in controversy is less than $10,000, but we presume this was inadvertent.

section 1331; the remaining question is whether HUD's sovereign immunity has been waived.

Hollywood Associates asserts that the APA has waived sovereign immunity. Section 10 of the APA waives the government's immunity in district court from claims seeking relief "other than money damages" and for which no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.[4] Such claims must be founded on agency action "for which there is no other adequate remedy in a court...." *Id.* § 704.[5]

■ *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), compels the conclusion that the relief sought by Hollywood Associates is not money damages, but a declaratory judgment and other equitable relief. In *Bowen*, Massachusetts challenged a final order by the Secretary of Health and Human Services refusing to reimburse the state through the Medicaid program for services related to intermediate care facilities for the mentally retarded. The state filed a complaint in district court alleging jurisdiction pursuant to section 1331 and waiver of sovereign immunity through the APA. In concluding that the relief sought by the state was not "money damages" within the meaning of the APA, the Court recognized that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to character-

ize the relief as 'money damages.'" 487 U.S. at 893, 108 S.Ct. at 2732. It distinguished between compensatory damages which " 'are given to the plaintiff to *substitute* for a suffered loss'" and specific remedies which " 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895, 108 S.Ct. at 2732 (citing *Maryland Dept. of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441, 1446 (D.C.Cir.1985)).

We see no significant distinction between the kind of relief sought by Massachusetts in *Bowen* and that sought by Hollywood Associates in this case. Like Massachusetts, Hollywood Associates seeks payments to which it alleges it is entitled pursuant to federal statute and regulations; it does not seek money as compensation for a loss suffered. It wants to compel HUD to perform the calculation of contract rents in accordance with 24 C.F.R. § 882.408 and other applicable regulations. That a payment of money may flow from a decision that HUD has erroneously interpreted or applied its regulation does not change the nature of the case. *See Bowen*, 487 U.S. at 900, 108 S.Ct. at 2735 ("The State's suit ... is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which

4. Section 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action

or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5. Section 704 provides:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

happens to be one for the payment of money.")

HUD argues that the APA is not appropriate because "adequate relief" is available in the Court of Federal Claims under the Tucker Act, which allows that court to "render judgment upon any claim against the United States founded ... upon ... any regulation of an executive department ... or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1). Our conclusion on this issue is also controlled by *Bowen* and focuses on the nature of the relief:

> The [Court of Federal Claims] does not have the general equitable powers of a district court to grant prospective relief. Indeed, we have stated categorically that "the [Court of Federal Claims] has no power to grant equitable relief." ... We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.

487 U.S. at 905, 108 S.Ct. at 2737–38 (footnote omitted). Hollywood Associates unmistakably asks for prospective relief. An adjudication of the lawfulness of HUD's regulatory interpretation will have future impact on the ongoing relationship between the parties. The Court of Federal Claims cannot provide this relief. *See Transohio Sav. Bank v. Director, OTS,* 967 F.2d 598, 608 (D.C.Cir.1992) ("Because the [Court of Federal Claims] cannot grant the equitable relief Transohio seeks ... the 'adequate remedy' limitation on the APA's waiver of sovereign immunity does not interfere with the district court jurisdiction over Transohio's claims.")

HUD argues that unlike *Bowen* this case involves a contract, which calls for another outcome. This distinction is not determinative. Merely because the challenged regulations are tracked in the language of the contract between Hollywood Associates and Housing Allowance does not mean that Hollywood Associates seeks a kind of relief different from that in *Bowen*—specific and prospective. "The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution." *Transohio,* 967 F.2d at 609. Hollywood Associates has challenged HUD's actions as a regulator. We presume, as did the *Bowen* court, that once the propriety of HUD's interpretation of the regulation has been adjudicated it will act accordingly, and any monetary consequences will flow through the contractual scheme. *See* 487 U.S. at 910, 108 S.Ct. at 2740 ("[T]he judgment tells the United States that it may not disallow the reimbursement on the grounds given, and thus it is likely that the Government will abide by this declaration and reimburse Massachusetts the requested sum.").

Finally, HUD says the Tucker Act impliedly forbids declaratory relief or specific performance in this case because where contract damages are available in the Court of Federal Claims, the Tucker Act forbids specific performance or declaratory relief under its terms and thus impliedly forbids such relief via the APA. *Sharp v. Weinberger,* 798 F.2d 1521, 1523 (D.C.Cir.1986); *see also Price v. GSA,* 894 F.2d 323, 324 (9th Cir.1990); *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1485 (9th Cir.1985). The prerequisite to this prohibition, however, is that the statute which forbids the relief sought "grants consent to suit," 5 U.S.C. § 702, in this case that some relief be available in the Court of Federal Claims under the Tucker Act.

But as we have discussed, no relief is available in the Court of Federal Claims here because the case challenges the interpretation of law which controls payment to Hollywood Associates. It is not a contract case. Hollywood Associates does not seek declaratory relief in the performance of a contract, but seeks judicial interpretation of a federal regulation. The multifarious and alternative pleas should not obscure this point.

As HUD itself observes, another problem prevents Hollywood Associates from securing any Tucker Act relief, despite its struggle to plead a case that will stand up even if it is transferred to the Court of

Federal Claims. Any express contract that might be invocable is between Hollywood Associates and Housing Allowance, not between Hollywood Associates and the United States, which is, of course, the sine qua non of jurisdiction in the Court of Federal Claims. Absent privity between Hollywood Associates and the government, there is no case. *Erikson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550 (Fed.Cir.1983). A grant of benefits and subsequent oversight by HUD is insufficient to establish a contractual obligation between Hollywood Associates and the government. *See Marshall N. Dana Constr., Inc. v. United States,* 229 Ct.Cl. 862 (1982). "This is true even if the local agency is acting merely as a conduit for the federal funds." *Id.* at 864 (citing *G–Lam Corp. v. United States,* 227 Ct.Cl. 764 (1981)). And the most ephemeral contract claim extruded from the complaint, that Hollywood Associates is a third party beneficiary of a contract between HUD and Housing Allowance Project, Inc., is equally problematical. If there is a third party beneficiary at all, it is probably the low-income tenants for whom the housing was ultimately intended. In any event, we see Hollywood Associates' contract claims as purely incidental to the relief it really seeks, declaratory, not damages for breach of a third party contract. To the extent that Hollywood Associates has raised contract claims against HUD in its complaint, contract remedies are not available.[6]

This analysis also answers the question whether the Tucker Act impliedly forbids relief under the APA. It does not because it does not cover this situation. The absence of the United States as a defendant in contract means the Tucker Act is not applicable and cannot forbid the requested relief, either expressly or impliedly. The Act does not, as it could not, authorize suits against private parties.

### Conclusion

Accordingly, the order of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Hollywood Associates shall have its costs.

*REVERSED AND REMANDED.*

RADER, Circuit Judge, dissenting.

Sovereign immunity bars suit against the United States without an express statutory waiver of that immunity. *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). This court finds such a waiver in 5 U.S.C. § 702 (1988). Section 702, however, only waives immunity for suits seeking relief "other than money damages." *Id.* Because money damages would provide a full remedy in this case, 5 U.S.C. § 702 does not supply a waiver of immunity.

This case seems deceptively to present an arcane and narrow legal issue. To the contrary, it presents an extremely important issue that may dictate the allocation of judicial resources nationwide and undermine the purpose of the United States Court of Federal Claims. Therefore, I must respectfully dissent.

### I.

The Court of Federal Claims holds the entrusted place within the federal judiciary of adjudicating claims against the Federal Government for money damages, 28 U.S.C. § 1491 (1988 & Supp. IV 1992), often suits for breach of Government contracts. To ensure national uniformity in Government contract law, title 28 assigns all but a few Government contract cases to the Court of Federal Claims, rather than to the district courts. 28 U.S.C. § 1346 (1988 & Supp. IV 1992). This court today reads *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), to create an easy and attractive avenue for litigants who wish to evade this statutory framework and remain

---

**6.** The district court also held that mandamus relief was not available to Hollywood Associates under 28 U.S.C. § 1361, because an adequate remedy was available in the Court of Federal Claims. Because we reverse that premise, this issue is open for reconsideration on remand, as well.

in a local district court. *Bowen*, however, does not permit contract cases for money damages, like this one, to avoid the requirements of title 28 by invoking the Administrative Procedure Act (APA).

*Bowen* held that a State's suit to enforce a provision of the Medicaid Act was not "a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself." *Bowen*, 487 U.S. at 900, 108 S.Ct. at 2735. Because Medicaid funds flow from an open account, the Supreme Court stated that Bowen's claim was arguably "not one in which the State can claim an entitlement to a specific sum of money that the Federal Government owes to it." *Id.* at 907, 108 S.Ct. at 2739. Therefore, perceiving no claim for a specific amount of money damages, the Supreme Court held that Bowen's claim should remain in the district court.

Unlike an action for an indeterminate amount of funds dispersed from Medicaid's open accounts, however, this action seeks a specific sum for a breach of contract. This case is drastically different from *Bowen*. Indeed, other circuits have also read *Bowen* to uphold, not undercut, the framework of title 28.[1] Our sister circuits have read *Bowen* to reinforce the Tucker Act's grant of jurisdiction over contract cases.

In sum, *Bowen* suggests only that the APA waives immunity for long-term interactions between States and the Federal Government involving constantly shifting balance sheets, while the Tucker Act remedies breaches of contract and other particular categories of injury. *Bowen*, 487 U.S. at 904–05 n. 39, 108 S.Ct. at 2737 n. 39. In addition, *Bowen*'s reliance on the congressional intent of the Medicaid program, on the role of state law in

disallowance actions, and on the "complex ongoing relationship between the parties," *id.* at 905, 108 S.Ct. at 2737–38, simply has no application to this contract action.

## II.

This court perceives that the instant case is not a contract case. The complaint, however, lists six counts, all of which invoke contractual relief. Count I seeks to mandamus the Department of Housing and Urban Development (HUD) to pay the contract rents in the Housing Assistance Payments (HAP) Contract. Count II requests a declaratory judgement that HUD pay the full amount of the contract rents provided by the HAP Contract. Count III asserts a breach of duty to follow the HAP Contract. Count IV asserts breach of the HAP contract. Count V alleges a breach of contract in which the plaintiff is a third-party beneficiary. Count VI asserts a breach of contract implied in law. Each count seeks relief for breach of contractual duties. Clearly, these six counts delineate a contract action. The complaint asks only for enforcement of the contract or damages for breach. This contract action falls squarely within the bounds of the Tucker Act.

This court's view that the complaint calls for specific performance, not money damages, exalts form over substance. It requires little imagination to transform a breach of contract claim into a series of individual counts couched in equitable language. For example, Count I simply requests an order requiring the Government follow the contract. Count II is nothing more than a request for declaration that the sum provided by the contract must be paid. Count III estops the Government from refusing to pay the Contract Rents. All of these

---

1. *See Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d 445 (7th Cir.1990) ("[T]he Tucker Act ... assigns to the [Court of Federal Claims] all actions seeking equitable relief based on a contract with the United States."); *North Star Alaska v. United States*, 14 F.3d 36 (9th Cir.1994) (holding that a claim for reformation of a contract is contractual in nature and not cognizable in the district court under the Administrative Procedure Act; moreover, the 9th Circuit stated that *Bowen* specifically excluded "equitable actions for monetary relief under a con-

tract" from the ambit of § 702, citing *Bowen*, 487 U.S. at 895, 108 S.Ct. at 2732); *Eagle–Picher Indus. v. United States*, 901 F.2d 1530, 1532 (10th Cir.1990) (waiver of sovereign immunity under the APA does not extend to actions founded upon contract with the United States which are governed by the Tucker Act); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4–5 (1st Cir.1989) (rejecting the contention that *Bowen* permitted a district court to award equitable relief on a contract and limiting *Bowen* to review of agency action, not breaches of contract).

claims seek injunctions to enforce the contract. Indeed, even *Bowen* agrees that artful pleading should not defeat the requirements of title 28. *Bowen* cited approvingly a case where this court designated the Court of Federal Claims as the proper forum to challenge a federal grant program, despite the plaintiffs' effort to disguise their complaint as seeking only injunctive, mandatory, or declaratory relief against the Government. *Bowen*, 487 U.S. at 882–83 n. 1, 108 S.Ct. at 2726 n. 1 (citing *Chula Vista City School Dist. v. Bennett*, 824 F.2d 1573 (1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988)).

In the instant case, creative pleading cannot mask a wrong fully compensable by money damages. The form of pleading simply does not affect or defeat the allocation of jurisdictions in title 28.

### III.

Plaintiff has the burden to show jurisdiction. To meet that burden he offers only the APA and pleads a federal question. The APA provides a right of review in district court only where there is no other adequate remedy. 5 U.S.C. § 704. Thus, the plaintiff must show that the Court of Federal Claims could not provide adequate compensation. Plaintiff has provided no such proof. In fact, money damages for breach of contract will make the plaintiff whole.

Moreover, section 702, this court's basis for a statutory waiver, does not provide relief "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Section 1346 of title 28 forbids district courts from entertaining a suit for breach of contract in excess of $10,-000. As discussed earlier, this case is, in effect, a suit for breach of contract exceeding $10,000. Section 1346 should bar this court's invocation of 5 U.S.C. § 702 as a statutory waiver of immunity.

### IV.

The court asserts that the plaintiff's action is beyond the purview of the Tucker Act

because the express contract is between Hollywood Associates and Housing Allowance, not between Hollywood Associates and the United States. At the preliminary stage of litigation, however, this court must accept the plaintiff's pleadings at face value. Those pleadings charge breach of contract and name the Government's agent as defendant.

More important, if the dispute is not between Hollywood Associates and the United States, as the court asserts, then surely the APA offers no jurisdiction. The APA only provides access to sue the Government, not to sue private corporations.[2] Thus, if the court insists upon reading beyond the pleadings at this preliminary stage, it should also concede that the APA, even under an expansive reading of *Bowen*, offers Mr. Katz no district court jurisdiction. The Tucker Act, on the other hand, allows the Court of Federal Claims to "render judgment upon any claim against the United States founded ... upon ... any regulation of an executive department" if Mr. Katz really seeks relief under regulatory policies. Alternatively, the Tucker Act permits suits founded "upon any express or implied contract with the United States"—if Mr. Katz actually seeks contractual relief. Again, because Mr. Katz seeks relief fully compensable by money damages—whether under a regulation or under a contract—the Tucker Act dictates the forum for this case.

In sum, if—as the pleadings maintain—this is a contract action against the Government, it belongs in the Court of Federal claims under the Tucker Act. If Mr. Katz has no action against the Government, this case belongs in state court if anywhere. In no event, however, does the APA offer Mr. Katz access to a federal district court.

### V.

The Government enters contracts nationwide. These Government contracts should enjoy a uniform interpretation for the benefit

2. Actions not dismissed under 5 U.S.C. § 702 are those "stating a claim that an agency or an officer or employee" acted improperly. As speci-fied by 5 U.S.C. § 701, " 'agency' means each authority of the Government of the United States" with delineated exceptions.

of all parties. The Court of Federal Claims has served to provide this nationwide uniformity. Unfortunately this court's holding today suggests that creative pleading can avoid the Court of Federal Claims and defeat the benefits of title 28's statutory framework. This court, with a particular mandate to protect the values of national uniformity, should not tolerate the circumvention of title 28. For these reasons, I would affirm.