**Roy Michael MALONE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–345C.

United States Court of Federal Claims.

Oct. 6, 1995.

Previously filed as unpublished
on June 27, 1995.

Order Granting Motion for Publication
on Oct. 6, 1995.

Hugh Jacob Moore, Jr., Chattanooga, Tennessee, for plaintiff.

Anthony J. Ciccone, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lynn E. Marsal, Associate Regional Counsel, Department of

Housing and Urban Development, of Counsel.

## ORDER

MEROW, Judge.

By motion, filed on September 18, 1995, pursuant to RCFC 52.1(b), defendant seeks publication of the order issued in this case on June 27, 1995. No opposition to this motion has been filed, and the time to so file has expired.

It is concluded that the reasons cited by defendant have merit and it is **ORDERED** that:

(1) Defendant's September 18, 1995 motion is **ALLOWED**;

(2) The attached unpublished order, filed June 27, 1995, as retitled "Opinion" is now submitted for publication.

## ATTACHMENT

## OPINION

MEROW, Judge.

This suit alleges breach of contract and seeks retroactive housing assistance payments pursuant to section 801 of the Department of Housing and Urban Development Reform Act of 1989 (HUD Reform Act of 1989), Pub.L. No. 101–235, 103 Stat. 2057. This matter is now before the Court on defendant's motion to dismiss the amended complaint.[1] The defendant argues that, pursuant to RCFC 12(b)(1) and 12(h)(3), the complaint should be dismissed for lack of Tucker Act jurisdiction. For the reasons discussed below, it is concluded that the complaint must be dismissed.

### FACTS

To understand the facts of this case requires a review of several applicable housing statutes. In 1974, Congress amended the United States Housing Act of 1937 to create what is known as the Section 8 housing program. *See generally Cisneros v. Alpine*

ATTACHMENT—Continued

*Ridge Group,* 508 U.S. 10, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993). This grant-in-aid program is designed to "ai[d] low-income families in obtaining a decent place to live," 42 U.S.C. § 1437f(a), by subsidizing private landlords who rent to low-income tenants.

Section 8(e), established in 1979, was HUD's Moderate Rehabilitation (Mod Rehab) Program. The program complemented Section 8. It was repealed in 1990, but this does not affect the instant litigation. *See* Pub.L. No. 101–625, Title II, § 289(b); 42 U.S.C. § 1437f(e)(2).

The Mod Rehab program had authorized the Secretary of HUD to make assistance payments "directly or through public housing agencies" to "owners or prospective owners who agree to upgrade [low-income] housing." 42 U.S.C. § 1437f(e)(5) (repealed). More specifically, HUD and a public housing agency (PHA) would first enter into a funding agreement, or Annual Contributions Contracts. 24 C.F.R. §§ 882.102, 882.403 (1982). The PHA would then execute an agreement to enter into a Housing Assistance Payments (HAP) contract with property owners who had agreed to rehabilitate and rent their unit(s) to eligible low-income families. *Id.* at §§ 882.402, 882.508.

When the rehabilitation was completed, the PHA and owner would execute a HAP contract which stipulated, *inter alia,* the contract rent. *Id.* at §§ 882.102, 882.511. The contract rent was the sum of the tenant's rent payment and the subsidy the PHA (or HUD) paid to the owner. *Id.* at §§ 882.102, 802.105. The subsidy was determined by several factors, *e.g.,* fair market rents and amortization of rehabilitation costs. *Id.* at §§ 882.106, 882.409–.410. Furthermore, the subsidy could be increased or decreased annually to adjust for such things as economic conditions and an owner's fluctuating operating costs. *Id.* at § 882.411.

Unless otherwise noted, the following facts are not in dispute. Plaintiff Roy Michael Malone owned fifteen properties in the Chat-

---

**1.** On October 1, 1993, the plaintiff filed a motion to amend the complaint. The defendant does not oppose the motion and has supplemented the instant motion to account for the amended com-

plaint. In these circumstances, and in light of RCFC 15(a)'s liberal amendment standard, the plaintiff's motion to amend is granted.

tanooga, Tennessee area which qualified for the Mod Rehab program. In 1982, Mr. Malone and the Chattanooga Housing Authority (CHA) entered into HAP contracts to govern those properties.

In 1985, the HUD Regional Inspector General (IG) found that CHA was not administering its Mod Rehab Program adequately and made several recommendations that were to halt the payment of excess rents. (Several of the plaintiff's properties were included in the IG audit.) The IG advised that HUD should, *inter alia*, require CHA to: (1) "establish and begin to pay proper HAPs for all units;" (2) "recover prior overpayments in HAP assistance from the owners;" and (3) "amend all HAP contracts as appropriate to specify the proper base and contract rents." *See* Pltf's Response Appdx. at Ex. C p. 14

CHA responded to the audit. In 1987, it brought suit against Mr. Malone in the Chancery Court of Hamilton County, Tennessee, to recover $40,000 in alleged overpayments of rental subsidies. Mr. Malone counterclaimed contending that the housing authority breached the HAP contracts when it declined to pay an increased rental subsidy. In July 1989, the parties dismissed the suit with prejudice; neither side was compensated for the other's claims. In October 1989, CHA terminated the HAP contracts for thirteen of Mr. Malone's properties. In December 1989, CHA terminated the two remaining contracts. CHA also reduced Mr. Malone's subsidy during this time frame.

In June 1993, Mr. Malone filed the instant action asserting Tucker Act jurisdiction. Count I alleges that the Chattanooga Housing Authority breached the HAP contracts before their expiration and seeks $1.5 million in damages from the United States. Count II seeks the retroactive subsidy payments authorized by section 801 of the HUD Reform Act of 1989 from the United States.

### DISCUSSION

 Under the Tucker Act the Court of Federal Claims has jurisdiction to entertain a claim for money against the United States which does not sound in tort and which is

founded upon: (1) the Constitution; (2) an Act of Congress; (3) an executive department regulation; or (4) any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction upon the court when a substantive right exists. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). It does not create a substantive right enforceable against the United States for money damages. *Id.*

The defendant maintains that Count I should be dismissed for lack of Tucker Act jurisdiction because there is no contractual privity between plaintiff and the United States. The plaintiff counters that HUD was a party to the HAP contracts "[b]ecause of HUD's own description of the PHA [public housing authority] as a contract administrator and because of the quantity and type of powers granted to HUD in the HAP contract[s]." *See* Pltf's Response at 5. Mr. Malone insists, however, that the Court need not reach this privity issue because the HAP contracts include "remedy-granting provisions" which allow "suit directly against HUD" for CHA's breach of contract. *Id.*

 Count I must be dismissed for two reasons. First, there was no privity of contract between plaintiff and the Government. Rather, the HAP contracts at issue were between Mr. Malone and CHA; HUD was not a signatory. Absent privity, there is no contract claim against the Federal Government and thus no Tucker Act jurisdiction in this court. *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed.Cir.1994) (no Tucker Act jurisdiction for Section 8 builder's suit when Federal Government not a party to HAP contract); *see also Brighton Village Associates v. United States*, 52 F.3d 1056, 1059 (Fed.Cir.1995) (Section 8 suit which explains *Katz*).

While HUD was the source of the Mod Rehab funding, retained oversight authority over the program, and imposed certain requirements on Mr. Malone and CHA, this is insufficient to establish a contractual relationship, *i.e.*, privity, between Mr. Malone and the United States. *Katz*, 16 F.3d at 1210 (citing *Marshall N. Dana Constr., Inc. v. United States*, 229 Ct.Cl. 862, 864 (1982)); *see also Eubanks v. United States*, 25 Cl.Ct.

ATTACHMENT—Continued

131, 138 (1992) ("by funding and regulating the Moderate Rehabilitation Program, the United States 'is acting in its role as a sovereign and the monies promised are gifts or gratuities which do not establish any contractual obligation, express or implied, on the part of the United States.'" (citing *Marshall N. Dana Constr.*). This is true even if the local agency is acting merely as a conduit for the Federal funds. *Katz,* 16 F.3d at 1210 (citing *G–Lam Corp. v. United States* 227 Ct.Cl. 764, 1981 WL 21446 (1981)).

■ The United States and CHA also did not have an agency relationship that would permit the court to exercise its contract jurisdiction. When the United States is not a named party to a contract, jurisdiction can be nevertheless asserted if the person entering into the contract was acting within the scope of his or her authority to bind the United States. *Porter v. United States,* 204 Ct.Cl. 355, 360, 496 F.2d 583, 587 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 598, 372 F.2d 505, 508, *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). A local authority, however, does not become an agent of the Federal Government even though a Federal agency controls and supervises a grant of funds. *Blaze Const., Inc. v. United States,* 27 Fed.Cl. 646, 652 (1993) (citing *D.R. Smalley & Sons,* 178 Ct.Cl. at 597–98, 372 F.2d 505.) Indeed, when the Federal Government disburses grant funds it is both appropriate and necessary for it to establish standards and requirements for projects and have oversight of these funds. *Id.* This ensures that the intent of Congress is implemented and that the taxpayers' money is not wasted. *Id.*

Furthermore, plaintiff does not explicitly claim to be a third-party beneficiary of the contracts between HUD and CHA, namely the Annual Contributions Contracts. Nonetheless, such a claim would also be deficient because, if there were third-party beneficiaries at all, they would be the low-income

2. A HAP contract and this provision can be

ATTACHMENT—Continued

tenants for whom the housing was ultimately intended. *Katz,* 16 F.3d at 1210.

■ The second reason for dismissing Count I is that, contrary to plaintiff's assertion, the HAP contracts do not and cannot permit suits against HUD for CHA's breach of contract. The plaintiff cited the following HAP contract provision in support of this position:

> The provisions under the ACC and contract are made ... for the benefit of, the Owner.... If ... [the Owner is] not in default, ... [Owner] may, in order to enforce the performance of these provisions ... *sue HUD.* (Emphasis added by plaintiff.) *See* Pltf's Response at 2.

The plaintiff, however, omitted the full text of the provision (section 1.12(c)) which provides:

> The provisions under the ACC and Contract are made with, and/or for the benefit of, the Owner, the PHA *(where it is the lender and then only in its capacity as lender)*, or the Owner's other assignees, if any, who will have been specifically approved by the PHA or HUD prior to such assignment. If these parties are not in default, they may, in order to enforce the performance of these provisions (1) demand that HUD, after notice to the PHA giving it a reasonable opportunity to take corrective action, make a determination whether a Substantial Default exists under the ACC, (2) if HUD determines that a Substantial Default exists, demand that HUD take action as authorized by the ACC, and (3) sue HUD. (Emphasis in the original.) [2]

Mr. Malone may not trigger this provision and sue HUD because, *inter alia,* he never demanded that HUD determine whether CHA had substantially defaulted, and because HUD never determined that CHA had substantially defaulted. More importantly, though, this provision does not permit a suit against the United States because it "is immune from suit save as it consents to be sued." *Testan,* 424 U.S. at 399, 96 S.Ct. at 953 (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed.

found in Pltf's Response Ex. B at 6.

ATTACHMENT—Continued

1058 (1941)). In a breach of contract case such as this, the Government consents to be sued only by those with whom it has privity of contract. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550 (Fed.Cir.1983). Again, Mr. Malone does not have privity with the United States.

In Count II, plaintiff seeks the retroactive assistance payments authorized by section 801 of the HUD Reform Act of 1989. Mr. Malone also contests the calculation of the payment as contemplated by section 801's regulations because it assertedly violates the HAP contracts. *See* Amended Comp. at ¶¶ 56–57.

The defendant argues that Count II warrants dismissal for lack of Tucker Act jurisdiction because section 801 creates an exclusive remedy in HUD to grant the relief sought by plaintiff. *See* Dfd's Reply at 13. The defendant further argues that Mr. Malone's challenge of the regulations should be reviewed, if at all, through an Administrative Procedures Act action in district court. *Id.*

Count II must be dismissed for two reasons. First, any breach of contract claim included in Count II is without merit because, as discussed earlier, there was no privity between plaintiff and the United States.[3] Second, section 801 is not a money mandating statute.

■ The Tucker Act does not grant this court jurisdiction over any and all pecuniary

claims against the Government simply because it relies upon (and in that sense is "founded upon") a statute. *Eastport S.S. Corp.,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1008 (1967); *see also United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). Rather, to determine whether one may bring, pursuant to Tucker Act jurisdiction, a "claim against the United States founded ... upon any Act of Congress," 28 U.S.C. § 1491(a)(1), one must ask whether the statute can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. *Bowen v. Massachusetts,* 487 U.S. 879, 906 n. 42, 108 S.Ct. 2722, 2738 n. 42, 101 L.Ed.2d 749 (1988) (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009, cited with approval in *Testan,* 424 U.S. at 400, 96 S.Ct. at 954). If not, this court cannot give relief under the Tucker Act, although this does not necessarily preclude relief in another forum or under a special relief provision.[4] *Eastport S.S. Corp.,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

■ Statutes that have been "interpreted as mandating compensation by the Federal Government for the damage sustained" attempt to compensate a particular class of persons for past injuries or labors. *Bowen,* 487 U.S. at 906 n. 42, 108 S.Ct. at 2738 n. 42.[5] In contrast, the statutory mandate of a Federal grant-in-aid program directs a department secretary to pay money not as compensation for a past wrong, but to subsidize a state or local expenditure. *Id.*[6] A suit to

3. In *Cisneros,* the landlords (who were in privity with HUD) argued that section 801 was unconstitutional because its comparability rent caps took away their asserted contractual right to rent increases based on automatic adjustment factors. 508 U.S. at 16–17, 113 S.Ct. at 1902. The Court found that the contracts (similar to the ones in the instant suit) did not prohibit the use of comparability studies to impose an independent cap on the formula-based rent adjustments.

4. *See, e.g.,* 28 U.S.C. §§ 1491(a)(2)–(3), which gives the court equitable powers in specific kinds of litigation.

5. *See, e.g., Mitchell,* 463 U.S. at 226, 103 S.Ct. at 2972 (statutes and regulations at issue made Government fiduciary for the management of Indian lands and resources, thus the provisions mandated compensation by the Federal Government for damages sustained); *Julius Goldman's*

*Egg City v. United States,* 214 Ct.Cl. 345, 556 F.2d 1096 (1977), *aff'd,* 697 F.2d 1051 (Fed.Cir.), *cert. denied,* 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983) (21 U.S.C. § 134a(d) money mandating because Secretary of Agriculture required to compensate owner of animals destroyed by the Government because of disease); *Adam v. United States,* 26 Cl.Ct. 782, 785 (1992) and *Wheeler v. United States,* 3 Cl.Ct. 686, 689 (1983) (Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* is money-mandating statute); 5 U.S.C. § 5596(b) (Back Pay Act); 37 U.S.C. § 242 (1958 ed.) (repealed, see 76 Stat. 498 (1962) (provided compensation to prisoners of war)).

6. *See, e.g.,* 42 U.S.C. § 1396b(a) (directs Secretary of Health and Human Services to "pay" States certain sums for appropriate Medicaid services).

ATTACHMENT—Continued

enforce the latter statute is not within this court's jurisdiction because it does not seek compensation for the damage sustained by the Federal Government's failure to pay. *Id.* at 900. Rather, it is a suit seeking to enforce the statute itself, which happens to be one for the payment of money. *Id.; see also Katz,* 16 F.3d at 1208–09 (payment of housing subsidies pursuant to Federal statute and regulations not money damages and thus not within Court of Federal Claims's jurisdiction); *Brighton Village Associates,* 52 F.3d at 1059 n. 3 (analyzing *Katz* and *Bowen* on this issue).

■ Section 801 directs the Secretary of HUD to pay eligible housing owners a calculable rental subsidy as part of a program designed to aid low-income families obtain housing.[7] Section 801 does not mandate compensation by the Federal Government for damages sustained by landlords who participate(d) in the Section 8 program. In other words, the payment contemplated by the statute is not for the landlords' past injuries or labors, the essence of a Tucker Act claim for monetary relief. The history of section 801 supports this conclusion.

In the early 1980s, HUD suspected that the assistance payments it was making to some landlords under the Section 8 program were well above prevailing market rates for comparable housing. *Cisneros,* 508 U.S. at 12–13, 113 S.Ct. at 1900. Accordingly, the agency conducted "comparability studies" in certain markets where it believed that contract rents, adjusted upward by automatic adjustment factors, were materially out of line with market rents. *Id.* HUD selected apartment buildings it considered comparable to a Section 8 building and compared the rents. *Id.* The private market then served as a cap that limited the rent payments HUD made under a Section 8 HAP contract. *Id.*

In response to these caps, several Section 8 landlords brought suit against HUD. In *Rainier View Associates v. United States,* 848 F.2d 988 (9th Cir.1988), the court ruled that the HAP contracts prohibited the use of comparability caps. The Ninth Circuit reasoned that HUD, having contracted to increase rents each year based upon a formula (the second of the two alternative approaches permitted by section 8(c)(2)(A) of the Housing Act of 1937), could not thereafter limit those increases by a market survey (the first of the two statutory alternatives in the Housing Act). *See Cisneros,* 508 U.S. at 12–16, 113 S.Ct. at 1900–01.

The Supreme Court declined to review *Rainier View.* In these circumstances, HUD decided that it would not adhere to *Rainier View's* interpretation of the HAP contracts outside the Ninth Circuit. *Id.,* 508 U.S. at 13–16, 113 S.Ct. at 1901. In 1989, Congress enacted section 801 in an attempt to avert the prospect of inconsistent application of HAP contracts in the different circuits. *Id.*

Section 801 authorized HUD to limit future automatic rent adjustments through the use of comparability studies. *Id.* In an apparent compromise, however, section 801 also sought to restore to Section 8 project owners a portion of the rent adjustments they had been denied through the use of comparability

---

7. In pertinent part, section 801 provides that:
(1) In any case in which, in implementing section 8(c)(2) of the United States Housing Act of 1937—
(A) the use of comparability studies by HUD or the appropriate State agency ... resulted in the reduction of the maximum monthly rent for units covered by the contract or the failure to increase such contract rent to the full amount otherwise permitted under the annual adjustment factor, or
(B) ... the project owner certifies that a [rent adjustment] request was not made because of anticipated negative adjustment to the project rents ... rental adjustments shall be calculated as an amount equal to the annual adjustment factor multiplied by a figure equal to the contract rent minus the amount of contract rent attributable to debt service. Upon the request of the project owner, the Secretary shall pay to the project owner the amount, if any, by which the total rental adjustment calculated under the proceeding sentence exceeds the total adjustments the Secretary or appropriate State agency actually approved.... The method provided by this subsection shall be the exclusive method by which retroactive payments, whether or not requested, may be made for projects subject to this subsection for the period from fiscal year 1980 until the regulations issued under subsection (e) take effect.

264

ATTACHMENT—Continued

studies prior to the enactment of the 1989 amendments. *Id.*

In sum, Count II must be dismissed because it does not present a valid contract claim against the United States and because the statutory relief sought under section 801 is not money damages. Section 801 merely offers Section 8 owners (such as plaintiff) a partial retroactive payment for lower rent attributable to comparability studies and affirmed HUD's authorization to employ such studies to cap future rent adjustments. *Id.*[8]

## CONCLUSION

Accordingly, it is **ORDERED** that final judgment shall be entered **GRANTING** plaintiff's motion to amend the complaint, and **GRANTING** defendant's motion to dismiss the complaint as so amended. No costs to be assessed.

**8.** In *National Leased Housing Assoc. v. United States*, 22 Cl.Ct. 649 (1991), the court determined that section 801 was a money-mandating statute. *Id.* at 656. This determination was not the main issue before the court, *i.e.*, whether section 801 impliedly repealed the court's Tucker Act jurisdiction to entertain a breach of HAP contract claim. (Plaintiff and HUD had a contractual relationship.) Moreover, the analysis did not fully consider the effect and impact of *Bowen* on the housing assistance payment cases; it seems that this analysis first occurred in *Katz*.