**LECLAIRE COURTS RESIDENT MANAGEMENT CORPORA-TION, Plaintiff,**

v.

**CHICAGO HOUSING AUTHORITY, Defendant.**

**No. 96 C 4214.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 28, 1996.

---

Robert Ronald Tepper, Chicago, IL, for Leclaire Courts Resident Management Corporation.

Timothy Fair, Chicago Transit Authority, Chicago, IL, for Chicago Housing Authority.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Leclaire Courts Resident Management Corporation ("RMC") brings this suit complaining that the Chicago Housing Authority ("CHA") terminated its contract with RMC to manage the Leclaire Courts Housing Development ("Leclaire Courts") in violation of 42 U.S.C. § 1437r and 42 U.S.C. § 1983. Before the court is CHA's Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim.

### Background

RMC is an Illinois non-profit corporation. Complaint ¶ 2. From 1987 until the events described herein, RMC provided management services for the LeClaire Courts pursuant to a series of contracts it entered with the CHA, the owner of LeClaire Courts. ¶ 5.

The parties entered into the contract at issue, the Management Agreement ("Agreement"), on March 5, 1996. Under the Agreement, CHA is responsible for providing funds to RMC and RMC is responsible for providing day-to-day management of LeClaire Courts. The Agreement "start[s] on September 1, 1995 ... and shall continue through August 31, 1998, unless terminated pursuant to Sections 7.03 or 7.04 hereof." Agreement § 2.01. Article 7 provided for termination of the Agreement. Under § 7.03, CHA could terminate the Agreement upon twenty-four hour notice if "... in the sole discretion of the CHA, it determines that Development conditions and/or RMC actions or omissions constitute a threat to the health, safety, or welfare of Residents, neigh-boring residents or CHA employees." Pl. Exh. A ¶ 7.3(C).

In January 1995, RMC hired its first executive director. ¶ 9. After a number of disputes between the executive director and RMC's board, the executive director was discharged in the Spring on 1996. ¶ 9. Before the executive director's discharge, directors of RMC notified CHA of their belief that the executive director was acting improperly. ¶ 10. CHA's Inspector General conducted an investigation, finding certain improprieties generally relating to matters during the tenure of the former executive director. ¶ 10.

On or about June 13, 1996, CHA's executive director requested the resignations of RMC's entire Board of Directors. ¶ 11. After being threatened with criminal prosecution, all but one of the directors purported to resign on June 28, 1996. ¶ 13. On July 8, 1996, the one remaining director reappointed each of the former directors to the Board. ¶ 14.

At some time before the afternoon of July 10, 1996, CHA assumed management responsibilities of LeClaire Court. ¶ 15. The afternoon of July 10, CHA notified RMC that effective immediately it was terminating the Agreement pursuant to § 7.03, ¶ C of the Agreement. Tracking the language of § 7.03. the notice specified that the CHA "has determined that the [RMC] actions and/or omissions constitute a threat to the health, safety, and/or welfare of Residents and/or CHA employees ..." ¶ 18, Pl.Exh. D.

RMC brought this action seeking a declaratory judgment, alleging CHA did not perform the contract in good faith. ¶ 23. RMC alleges federal question jurisdiction for this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, alleging that CHA's acts were an actionable violation of 42 U.S.C. § 1437r and 42 U.S.C. § 1983.

In this Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Civil Rules of Procedure, CHA contends that the Court lacks jurisdiction to hear this case and that RMC fails to state a claim because (1) § 1437r does not imply a private right of action, (2) even if it did, this case does not

fall within that right of action, and (3) this matter is not ripe, Plaintiff not having exhausted its administrative remedies.

## Standards for Motions to Dismiss

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Company v. F.D.I.C.,* 999 F.2d 188 (7th Cir.1993). A party who invokes the jurisdiction of a federal court, must allege all facts necessary to give the court jurisdiction of the subject matter. *Stewart v. United States,* 199 F.2d 517 (7th Cir.1952). The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Capitol Leasing,* 999 F.2d at 191, citing *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979). A court must dismiss a case without reaching the merits if it concludes that it has no jurisdiction. *Shockley v. Jones,* 823 F.2d 1068, 1070 n. 1 (7th Cir.1987).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *See Adams v. Cavanagh Communities Corp.,* 847 F.Supp. 1390, 1396 (N.D.Ill.1994). In order to survive a motion to dismiss, a complaint must allege sufficient facts to outline a cause of action. *Davis v. Frapolly,* 747 F.Supp. 451 (N.D.Ill. 1989). The complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.,* 758 F.2d 203, 207 (7th Cir.1985).

In a 12(b)(6) motion, the Court must accept as true all well pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). However, the Court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir.1994). When evaluating the legal sufficiency of a plaintiff's factual allega-

tions, courts are held to a strict standard. A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993).

## Analysis

### I. Subject Matter Jurisdiction

■■■ When a complaint states a claim allegedly "arising under" federal law, invoking jurisdiction under 28 U.S.C. § 1331, a court should not merely accept the plaintiff's word that federal jurisdiction exists. *La-Salle National Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 142 (7th Cir.1996). A federal court cannot hear a claim otherwise within federal jurisdiction if the claim is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) (citations omitted). But this test of substantiality is applied in only extreme cases where the claim under federal law is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court..." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

■■■ Despite this generous standard, CHA contends that the Court does not have subject matter jurisdiction over this case. CHA argues that as § 1437r does not imply any private right of action, under the well-pleaded complaint rule, the complaint does not present a federal question within the meaning of § 1331, the claimed basis for federal jurisdiction.

§ 1437r provides that a "resident management corporation that qualifies under this section ... shall enter into a contract with the public housing agency establishing the respective rights and responsibilities of the corporation and public housing agency." 42 U.S.C. § 1437r(b)(4). The implementing regulations issued by the Department of Housing and Urban Development ("HUD")

further provide that the housing agency "shall give full and serious consideration to resident management corporations seeking to enter a management contract ... [and] shall enter into good-faith negotiations with a corporation seeking to contract to provide management services." 24 C.F.R. § 964.225(b).

Although the statute does not explicitly state a private right of action to enforce the statute, RMC argues one may be implied. The Supreme Court has used a four factor test in determining whether a right of action may be implied: (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent either to create such a remedy or to deny one; (3) is a private right of action consistent with the underlying purposes of the legislative scheme; and (4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, making it inappropriate to infer a cause of action based solely on federal law? *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). More recent cases have emphasized legislative intent is the most important factor, but the other *Cort* factors are still considered. See *Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

A brief examination of the *Cort* factors does not yield an obvious conclusion as to whether § 1437 implies a private cause of action exists or the precise scope of that cause of action. The term "shall" in either § 1437 or implementing regulation § 964.225(b) may imply a duty on the housing agency to negotiate with the resident management corporation. Accordingly, CHA may have a duty to negotiate with RMC. Under *Cort,* how such a duty may be enforced requires primarily investigation into legislative intent. At least in the implementing regulations, there is some indication in that a limited private cause of action was intended. The regulations provide that after a certain point in the administrative dispute process, "HUD shall serve notice on both parties that administrative remedies have been exhausted (except that, pursuant to mutual agreement of the parties, the time for negotiations may be extended by no more than an additional 30 days)?" 24 C.F.R. § 964.225(c). Although HUD may have exceeded its delegated authority in interpreting § 1437r, this provision suggests that HUD contemplated a limited private cause of action to enforce § 1437r. Why else issue a notice of exhaustion other than to allow the parties to pursue the matter in court? [1]

As the Court finds that it will have to interpret § 1437r to determine whether RMC has a cause of action under that statute, or under § 1983 based on a right conferred by § 1437r, the Court cannot find the assertion of a private right of action to enforce § 1437r is so insubstantial, implausible, or completely devoid of merit so as to not involve a federal controversy within the subject matter jurisdiction of the District Court.

Furthermore, the question is not foreclosed by prior rulings. No court has ruled as to whether § 1437r implies a private cause of action. CHA cites one case, *Alazan–Apache Resident Association v. San Antonio Housing Authority,* 885 F.Supp 949 (W.D.Tex. 1995), as holding that § 1437r does not imply a cause of action; but the *Alazan–Apache* court clearly states that it does not even reach that issue, ruling on a separate jurisdictional matter. *Id.* at 953. But even if the *Alazan–Apache* court had ruled that § 1437r does not create a private cause of action, that decision would not foreclose the question in this Court. Only a 7th Circuit or Supreme Court ruling may have that effect. Hence, regardless of the district court's holding, the Court would need to fully examine the question itself.

Therefore, the Court finds that under the substantiality test of jurisdiction the Court does have subject matter jurisdiction to hear this matter under § 1331. Having already concluded that the Court has jurisdiction under § 1331, the Court need not address the question of whether it also has jurisdiction under § 1343.

---

**1.** Perhaps, the exhaustion notice allows HUD to close its books on long-running disputes, but simply closing the books in the face of a party's refusal to follow HUD regulations is an odd means of enforcing a regulation, particularly when issuance of the notice is not discretionary.

## II. Failure to State a Claim

■ Although RMC successfully relies on § 1437r to achieve federal subject matter jurisdiction, the generosity of the substantiality test implies the possibility that RMC may nonetheless fail to state a claim on which relief can be granted. *ECM Motor*, 76 F.3d at 143. In determining whether RMC states a claim, the Court must go beyond the cursory analysis of the substantiality test and fully examine whether § 1437r establishes a cause of action. *Id.* While the distinction between these two stages of inquiry may be outdated, *Crowley Cutlery Company v. United States*, 849 F.2d 273, 277 (7th Cir.1988) or "may seem medieval in its fineness", *ECM Motor*, 76 F.3d at 144, the Supreme Court has consistently recognized the distinction. *ECM Motor*, 76 F.3d at 144.

CHA argues that under the *Cort* test § 1437r does not imply a private cause of action and even if it did, the cause of action does not support RMC's complaint. As CHA asserts, RMC's allegations do not state a claim under whatever limited cause of action § 1437r may establish.

While § 1437r may establish a right to good faith negotiations, perhaps even one enforceable directly or under § 1983, once those negotiations are held, and especially once those negotiations culminate in a contract, § 1437r offers no more. This point is manifest in the language of both the statute and implementing regulations. Both provide for contract negotiations but are completely silent about any subsequent relations between the housing agency and resident management corporation, whether the negotiations culminate in a contract or not.

RMC argues, however, that § 1437r implies a (federal) right to good faith performance of any resulting contract. Without a (federal) right to good faith performance, RMC argues, the right to good faith negotiations would be meaningless. RMC contends that "there neither is nor can be any question but that if such a contract is entered into, then it must—by hypothesis—be enforceable. It is categorically impossible that Congress intended, when it referred to 'contract', that the parties enter into some unenforceable pact." Pl.Resp.Mot.Sum.J. at 4

(emphasis omitted). RMC cites *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed.Cir.1994) in support of its position.

This argument is spurious. A contract between the parties is enforceable whether or not it is enforceable under federal law; it is enforceable under state law.

Congress' scheme to promote resident management of public housing projects clearly relies on state law as a foundation. Congress requires residents desiring to assume management responsibilities of a housing project to form a non-profit corporation under the applicable state law. § 1437r(b)(4). (See also 24 C.F.R. § 964.11.) Congress then requires that this corporation negotiate with the housing agency a contract assigning duties and responsibilities. This scheme allows Congress to use existing state corporate and contract law to provide the necessary rules for governing the resident management corporation. Not only must these rules regulate relations between the resident management corporation and the housing agency, but they also must regulate relations within the corporation, authority to act on behalf of the corporation, relations between the corporation and its employees, and countless other matters addressed by the existing body of state law. The statutory and regulatory silence regarding the period after contract negotiations indicates a scheme wherein existing state law would provide the necessary legal apparatus to support resident management of public housing projects. The contract at issue, in fact, demonstrates this point, specifying that it "shall be interpreted in accordance with and governed by the laws of the state of Illinois." Agreement § 9.03(A). The Court finds no indication that Congress intended to supplement the legal apparatus provided by state law with any duplicative federal law, let alone a good faith requirement already provided in state contract law.

Both cases cited by RMC in support of its contention are inapposite to the Court's finding. In both cases, the dispute concerned

particular contractual terms which allegedly violated a federal statute. In *Wright*, the plaintiff, a public housing tenant, maintained that under her lease the utilities charged by her housing agency resulted in rent in excess of that allowed by the Brooke Amendment, codified as 42 U.S.C. § 1437a. *Wright*, 479 U.S. at 421–22, 107 S.Ct. at 769–70. The Court noted that the plaintiff claimed a right to sue on the lease under state law, but brought the matter in federal court as the claim required interpretation of a federal statute. *Id.* at 422, 107 S.Ct. at 769–70. In *Katz* the plaintiff's claim also involved contract provisions which required interpretation of federal statutes. *Katz*, 16 F.3d at 1207. Both cases were in federal court to resolve questions involving conflicts between contractual terms and federal statutes. In this case, federal questions regarding the content of the contract at issue, such as those faced in *Wright* and *Katz*, simply are not present. Thus, neither case cited by RMC supports RMC's proposition.

Since § 1437r does not establish any enforceable federal rights beyond a possible limited right to good faith contract negotiations, RMC fails to state a claim under § 1437r.

■ Additionally, RMC also fails to state a claim under § 1983. § 1983 is available to enforce violations of federal statutes by agents of the state.[2] *Wright*, 479 U.S. at 423, 107 S.Ct. at 770. (citing *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)). However, as the Court has held that RMC's allegations do not amount to a violation of § 1437r, and RMC alleges violation of no other federal statute, RMC fails to state a claim under § 1983.

III. Failure to Exhaust Administrative Remedies

■ CHA also claims RMC has failed to pursue administrative remedies as provided in the Agreement, precluding the Court from hearing this claim. As this matter requires interpretation of the Agreement under Illinois contract law and the Court has already

determined that RMC has failed to state a federal claim, the Court declines to address this issue.

### Conclusion

For the foregoing reasons, and noting that the parties are presently litigating an action in state court regarding the same subject matter as this action, the Court finds that Plaintiff fails to state a claim against Defendant and dismisses this case without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

2. The Supreme Court has noted, however, that it may have stated this too broadly as "[s]ection 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Suter*, 503 U.S. at 357, 112 S.Ct. at 1367.