**HAWAII MOTOR SPORTS CENTER, Plaintiff,**

v.

**Bruce BABBITT, Secretary of Interior of the United States of America; Richard Danzig, Secretary of the Navy; United States of America; Jane Does 1–10; John Does 1–10; and Doe Entities 1–10, Defendants.**

**Civ.No. 99–00218 SOM/BMK.**

United States District Court, D. Hawai'i.

Dec. 13, 2000.

Edward C. Kemper, Kemper & Watts, Honolulu, HI, for Plaintiffs.

Joachim Cox, Special Assistant U.S. Attorney, Office of the United States Attorney, Honolulu, HI, for Defendants.

### ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff Hawaii Motor Sports Center ("Hawaii Motor") challenges an agreement by the United States government to transfer certain property at Barbers Point Naval Air Station ("Barbers Point") to the State of Hawaii's Department of Hawaiian Home Lands ("DHHL"). Hawaii Motor had applied to purchase or lease the Barbers Point property before the United States entered into its agreement with DHHL. Hawaii Motor alleges that the agreement has unlawfully denied it the opportunity to complete the application process for the Barbers Point property. Hawaii Motor therefore requests that the court: (1) prohibit the transfer of the Barbers Point property to DHHL; (2) order the transfer of the property to Hawaii Motor; and (3) compensate Hawaii Motor for damages it has allegedly suffered as a result of the United States' agreement with DHHL.

Defendants Bruce Babbitt, Richard Danzig, and the United States of America (collectively the "United States") have moved to dismiss all claims on the grounds that: (1) Hawaii Motor may not proceed under 5 U.S.C. §§ 701–706 (the Administrative Procedure Act) or 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act); (2) Hawaii Motor does not have a private right of action under the Hawaiian Home Lands Recovery Act ("HHLRA") or the Defense Base Closure and Realignment Act of 1990; and (3) Hawaii Motor

lacks constitutional and prudential standing to sue in this court. The court GRANTS the United States' Motion to Dismiss.

## II. BACKGROUND.

Barbers Point lies approximately sixteen miles west of downtown Honolulu on the Ewa Plain. *See* Record of Decision for the Disposal and Reuse of Naval Air Station Barbers Point, attached as Ex. A to Plaintiff's Motion for Partial Summary Judgment filed on July 15, 1999 ("Plaintiff's Motion for Summary Judgment"), at 2. Acting pursuant to the Defense Base Closure and Realignment Act of 1990, 10 U.S.C. § 2687, the 1993 Defense Base Closure and Realignment Commission recommended that the Barbers Point facility be closed. *See id.* at 1–2. This recommendation was approved by President Clinton and Congress, and the Navy began the process of disposing of Barbers Point. *See id.* at 2. The process began with the Navy's consideration of requests by the Department of Defense for properties at Barbers Point. *See id.* at 2–3. The remaining property was then made available to other federal agencies. *See id.* at 3. Property remaining after that was declared surplus to the needs of the United States. *See id.* at 4. Surplus property could be transferred by the United States by public benefit conveyances to state and local government agencies, by an economic development conveyance to a Local Redevelopment Authority, and/or by direct sales to the public. *See* Final Environmental Impact Statement for Disposal and Reuse of NAS Barbers Point, attached as Ex. C to Plaintiff's Motion for Summary Judgment.

The State of Hawaii formed the Barbers Point Reuse Committee (the "Committee") to act as the Local Redevelopment Authority for Barbers Point. *See* Amended Complaint ¶ 11. The Committee was to entertain applications for the Barbers Point lands. *See id.* The Committee was replaced by the Barbers Point Redevelop-

ment Commission (the "Commission"). *See id.* ¶ 12.

The Commission considered a detailed application from Hawaii Motor to purchase or lease 250 acres for a motor sports complex. *See* Letter from Michael Oakland to Jeanne Schultz dated November 10, 1994, attached as Ex. J to Plaintiff's Motion for Summary Judgment. The Commission had a tentative recommendation by its predecessor Committee supporting Hawaii Motor's proposal. *See* Memorandum by the Commission dated December 21, 1994, attached as Ex. L to Plaintiff's Motion for Summary Judgment. The recommendation stated that it was "made without consideration of other proposals competing for the same facilities and adjoining areas." *See id.* Up until the final meeting of the Commission, Hawaii Motor was the only entity seeking the requested 250 acres of Barbers Point property. *See* Amended Complaint ¶ 23.

After Hawaii Motor submitted its application in 1994, Congress enacted the HHLRA as Title II of Public Law 104–42, 109 Stat. 357. The purpose of the HHLRA was to resolve the longstanding claims by DHHL that the federal government had inequitably removed certain lands from the "available land" to be used to benefit native Hawaiians under the Hawaiian Homes Commission Act of 1920, 42 Stat. 108 ("HHCA"). Section 203 of the HHLRA sets out a process of land exchanges designed to compensate Hawaii and its native Hawaiian beneficiaries for the lands that were designated as "available" but nevertheless transferred to or otherwise acquired by the federal government. Section 203(b)(5) of the HHLRA specifically authorizes the Secretary of the Interior, in coordination with other federal departments, to convey federal lands to DHHL.

In accordance with the HHLRA, the United States and Hawaii signed a Memorandum of Agreement to implement the HHLRA on August 31, 1998. *See* Memorandum of Agreement, attached as Ex. D

to Defendant's Concise Statement in Support of Federal Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-motion for Summary Judgment, filed on December 16, 1999. The Memorandum of Agreement provides for the transfer of lands to DHHL pursuant to the HHLRA and for Hawaii's release of all claims under the HHCA. *See id.* The Memorandum of Agreement identifies several properties to be transferred to DHHL, including the Barbers Point property in issue. *See id.*

On April 5, 1999, Hawaii Motor filed the Complaint in this action, alleging that the planned transfer of the Barbers Point property violated the HHLRA and the Defense Base Closure and Realignment Act of 1990. This court dismissed Hawaii Motor's Complaint for lack of jurisdiction on September 20, 2000, but allowed Hawaii Motor to amend its Complaint to attempt to cure its jurisdictional defects. *See* Order Granting Defendants' Motion to Dismiss, Denying Plaintiff's Motion for Partial Summary Judgment and Denying Defendants' Cross-motion for Summary Judgment ("Order"). Hawaii Motor filed an Amended Complaint on September 29, 2000, repeating its earlier allegations and asserting jurisdiction based on 28 U.S.C. § 1331, 5 U.S.C. §§ 701–706 (the Administrative Procedure Act), 28 U.S.C. § 2201 (the Declaratory Judgment Act), and private rights of action under the HHLRA and the Defense Base Closure and Realignment Act of 1990.

The United States has moved to dismiss all claims under Fed R.Civ.P. 12(b)(1). The United States argues that Hawaii Motor may not proceed under 5 U.S.C. §§ 701–706 (the Administrative Procedure Act) or 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act). The United States further contends that Hawaii Motor does not have a private right of action under the HHLRA or the Defense Base Closure and Realignment Act of 1990. Finally, the United States argues that Ha-

waii Motor lacks constitutional and prudential standing to sue in this court.

## III. *STANDARD.*

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or may attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Thornhill,* 594 F.2d at 733.

The presumption is that federal courts "lack jurisdiction unless plaintiff pleads sufficient facts to establish it." *Celli v. Shoell,* 40 F.3d 324, 328 (10th Cir.1994). Hawaii Motor has the burden of proving that jurisdiction does in fact exist. *Thornhill,* 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Rosenbaum v. Syntex Corp.,* 95 F.3d 922, 926 (9th Cir.1996).

## IV. *ANALYSIS.*

The court grants the United States' motion to dismiss the Amended Complaint for three reasons. First, the Administrative Procedure Act and the Declaratory Judgment Act do not provide an independent

basis for this court's jurisdiction. Second, the HHLRA and the Defense Base Closure Act of 1990 do not create private rights of action in favor of Hawaii Motor. Finally, Hawaii Motor is not entitled to non-statutory judicial review because it lacks standing to bring this case.[1]

### A. *The Administrative Procedure Act and the Declaratory Judgment Act Do Not Provide an Independent Basis for Federal Jurisdiction.*

■ Hawaii Motor may not base this court's jurisdiction on the Administrative Procedure Act or the Declaratory Judgment Act. The Administrative Procedure Act provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Administrative Procedure Act "does not provide an independent jurisdictional basis; it only prescribes the standards for reviewing agency action once jurisdiction is otherwise established." *Staacke v. United States Sec'y of Labor,* 841 F.2d 278, 282 (9th Cir.1988) (citing *Califano v. Sanders,* 430 U.S. 99, 106–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (the Administrative Procedure Act "was not intended as an independent jurisdictional foundation")).

■ As the court held in its Order filed on September 20, 2000, the Declaratory Judgment Act is a remedial statute that provides federal courts with discretionary power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The operation of the Declaratory Judgment Act is "procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Although the De-

---

1. Given the court's analysis, the court need not address the issue of whether the actions alleged in the Amended Complaint by Hawaii Motor constitute final agency actions under the Administrative Procedure Act.

claratory Judgment Act expands the court's remedial powers, it is not an independent basis of jurisdiction. *See id.*

Accordingly, the Administrative Procedure Act and the Declaratory Judgment Act do not by themselves provide the court with jurisdiction to review the decision to transfer the Barbers Point property to DHHL. The only other basis of jurisdiction alleged in the Amended Complaint is 28 U.S.C. § 1331. Pursuant to section 1331, this court has jurisdiction over this action if it arises under federal law. 28 U.S.C. § 1331. Hawaii Motor must therefore establish that its claims may be brought directly under federal law. The specific federal laws Hawaii Motor relies on are the HHLRA and the Defense Base Closure and Realignment Act of 1990, neither of which provides a jurisdictional basis for this action.

B. *The HHHLRA and the Defense Base Closure and Realignment Act of 1990 Contain No Private Rights of Action.*

■ The "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." [2] *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Instead, before inferring that a statute creates a private right of action, the court must carefully analyze whether Congress intended to make such a remedy available to private citizens. *See California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)

(noting that the key inquiry in determining whether a private right of action exists is congressional intent). Neither the HHLRA nor the Defense Base Closure and Realignment Act of 1990 expressly provides for a private right of action. *See* P.L. 104–42, 109 Stat. 357; 10 U.S.C. § 2687. Hawaii Motor must therefore establish that an implied private right of action exists under those statutes. *See Cannon,* 441 U.S. at 688, 99 S.Ct. 1946.

■ "[B]efore a private cause of action may be inferred from a statute, ineluctable inferences must arise from the Act to compel such a finding." *Parks,* 51 F.3d at 1484 (citation and quotation omitted). Whether to imply a private right of action is a matter of statutory construction that requires the court to consider four factors:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). "These factors are

---

**2.** The court examines this issue under Fed. R.Civ.P. 12(b)(1). However, there is no controlling appellate authority regarding whether Rule 12(b)(1) or Rule 12(b)(6) governs here. Several decisions refer to Rule 12(b)(6) in determining whether a claim should be dismissed on the ground that there is no private right of action, but these references are without analysis of whether Rule 12(b)(1) might apply instead. *See, e.g., Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633–40, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Burgert v. The Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 662–63 (9th Cir.2000);

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 532–33 (9th Cir.1984). *But see Massachusetts Fed'n of Nursing Homes v. Commonwealth of Massachusetts,* 791 F.Supp. 899, 900–02 (D.Mass.1992) (applying Rule 12(b)(1) in determining whether there is a private right of action); *Leclaire Courts Resident Management Corp. v. Chicago Hous. Auth.,* 945 F.Supp. 1107, 1109–10 (N.D.Ill. 1996) (dismissing a case for lack of subject matter jurisdiction under Rule 12(b)(1) because there was no private right of action under the United States Housing Act). The court's ruling is the same under either rule.

not given equal weight; the critical inquiry is congressional intent." *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982)). "Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose . . . are ones traditionally relied upon in determining legislative intent." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). "In a case in which neither the statute nor the legislative history reveals a congressional intent to create a private right of action for the benefit of the plaintiff," the inquiry is at an end. *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94 n. 31, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).[3]

1. *Benefit.*

Neither the HHLRA nor the Defense Base Closure and Realignment Act of 1990 was enacted for the especial benefit of applicants seeking to buy or lease recently closed military base property, such as Hawaii Motor.[4]

The purpose of the HHLRA is to resolve the longstanding claims by DHHL that the federal government had inequitably removed certain lands from the "available land" to be used to benefit native Hawaiians under the HHCA of 1920, 42 Stat. 108. HHLRA § 203(a), 109 Stat. at 359. Accordingly, the HHLRA was enacted to benefit DHHL and Native Hawaiians, not applicants for military property. In fact, the HHLRA defines "beneficiary" as a "native Hawaiian." HHLRA § 202(2), 109 Stat. at 357.

Hawaii Motor further argues that section 203(b)(5)(c) of the HHLRA was enacted to benefit applicants for military property under the Defense Base Closure and Realignment Act of 1990. Section 203(b)(5)(c) of the HHLRA provides that "[n]o federal lands that generate income (or would be expected to generate income) for the Federal Government may be conveyed pursuant to an exchange made under this paragraph to" DHHL. Hawaii Mo-

---

**3.** Hawaii Motor argues that a private right of action should be implied because of the mandatory language in the HHLRA. *See* P.L. No. 104–42, § 203(b)(5)(C), 109 Stat. 353, 359 ("No Federal Lands that generate income (or would be expected to generate income) for the Federal Government may be conveyed pursuant to an exchange made under this paragraph to [DHHL]"). In support, Hawaii Motor relies on *Student Coalition for Peace v. Lower Merion Sch.,* 776 F.2d 431, 440 (3d Cir.1985), which found an implied private cause of action under the Equal Access Act. *See id.* at 441. The *Student Coalition* court recognized that the argument for an implied right of action was supported by the mandatory language in the Equal Access Act providing that "it shall be unlawful . . . to deny equal access . . . to . . . any students who wish to conduct a meeting." *See* 20 U.S.C. § 4071(a). This, however, was not the sole determining factor. *See* 776 F.2d at 438–41. The court analyzed the issue using the four factors set forth in *Cort* and determined that the factors weighed in favor of an implied private right of action. *Id.* at 440–41. Accordingly, this court must examine the four *Cort* factors to determine whether an implied private right of action exists under the HHLRA and the De-

fense Base Closure and Realignment Act of 1990 despite the mandatory language of those statutes. The mandatory language of a statute does not automatically imply a private right of action. *See Cannon,* 441 U.S. at 688, 99 S.Ct. 1946 (The "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person").

**4.** Hawaii Motor contends that the HHLRA and the Defense Base Closure and Realignment Act of 1990 should be read together to form a common implied private right of action. The language and legislative history of these statutes do not support this contention. Although Congressman Abercrombie referred to the Defense Base Closure and Realignment Act of 1990 in the legislative history of the HHLRA, nowhere did Congressman Abercrombie suggest that the two statutes should be read together to form a common private cause of action. *See* 141 Cong. Rec. H9073–74 (1995). Nothing else within either of these statutes suggests as much. The court therefore examines the statutes separately to determine if either one creates a private right of action in favor of Hawaii Motor.

tor complains that the sale or lease of the Barbers Point property to it would have generated or would have been expected to generate income for the federal government. Hawaii Motor concludes that the Barbers Point Property could not be conveyed to DHHL.

The language of the statute demonstrates that this section was enacted to benefit the United States, not applicants for federal property. HHLRA § 203(b)(5)(c), 109 Stat. at 359. Under section 203(b)(5)(C), lands that generate income or are expected to generate income for the United States are the only lands that cannot be conveyed. *See id.* This section reserves to the United States the right to determine what to do with valuable lands that generate income for the federal government. *See id.* Although applicants such as Hawaii Motor may indirectly benefit from this prohibition, nothing in the statute or legislative history supports the contention that section 203(b)(5)(C) was enacted for their especial benefit. Certainly, there is no indication that a party like Hawaii Motor may sue for an alleged violation of section 203(b)(5)(C).

Such an indication is similarly lacking in the Defense Base Closure and Realignment Act of 1990, which was passed to speed the "economic recovery of communities affected by [base] closures and realignments." 32 C.F.R. § 175.7(a)(1). It is true that a primary method of speeding economic recovery is to provide the opportunity for businesses to purchase and develop available property. Nonetheless, such businesses are not among the class for whose especial benefit the Defense Base Closure and Realignment Act of 1990 was enacted. The statute was enacted to benefit the affected community surrounding the base, not businesses seeking to purchase and develop property within the community. *See id.*

### 2. *Legislative History.*

The legislative histories specific to each act provide no evidence of a congressional intent to confer private rights of action to enforce violations of the statutes. *See* 141 Cong. Rec. H9068–01 (1995); 141 Cong. Rec. S11342–02 (1995); S.Rep. No. 104–119 (1995), *reprinted in* 1995 U.S.C.C.A.N. 405; H.R.Rep. No. 104–73 (1995); H.R.Rep. No. 101–665, *reprinted in* 1990 U.S.C.C.A.N. 2931 (1990); H.R. Conf. Rep. No. 101–923 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3110. In fact, the legislative histories of the HHLRA and the Defense Base Closure and Realignment Act of 1990 are silent on the issue of private rights of action. Accordingly, the second *Cort* factor does not weigh in favor of an implied private right of action.

### 3. *Legislative Scheme.*

An implied private right of action is inconsistent with the underlying purposes of the legislative scheme of both statutes. The underlying goal of the HHLRA is to resolve the longstanding claims by DHHL that the federal government had inequitably removed certain lands from the "available land" to be used to benefit native Hawaiians under the HHCA of 1920, 42 Stat. 108. An implied private right of action would undercut, rather than complement, this legislative goal. For example, if Hawaii Motor could invalidate the transfer of the Barbers Point property to DHHL, the United States would be prohibited from using this property to resolve some of the claims by DHHL for the benefit of native Hawaiians. That would certainly be inconsistent with the underlying purpose of the HHLRA scheme.

The underlying purpose of the Defense Base Closure and Realignment Act of 1990 is to "promptly implement proposals for base closures and realignment." *See* H.R. Conf. Rep. No. 101–923, at 707, U.S.Code Cong. & Admin.News 1990, p.3110; *see also* H.R.Rep. No. 101–665, at 384, U.S.Code Cong. & Admin.News 1990, p.2931 ("Expedited procedures . . . are essential to make the base closure process work"). An implied private right of action to enforce the HHLRA and the Defense Base Closure and Realignment Act of 1990

would only undercut this legislative goal by delaying the base closure process. This delay is one of the reasons behind the enactment of the Defense Base Closure and Realignment Act of 1990. *See* H.R. Conf. Rep. No. 101–923, at 705 (earlier base closures had "take[n] a considerable amount of time and involve[d] numerous challenges in court").

Accordingly, the court finds no support in the legislative schemes of the statutes for the idea that Congress intended to create an implied private right of action against the United States.

4. *State Law.*

The closure of Barbers Point Naval Air Station and the appropriateness of the transfer of federal property to DHHL is not an area of concern for the States. Moreover, this issue is not one traditionally relegated to state law. This action involves federal properties subject to federal laws. Accordingly, this factor weighs in favor of an implied private right of action. However, the court concludes that the first, second, and third factors weigh against the finding of implied private rights of action under the HHLRA or the Defense Base Closure and Realignment Act of 1990. The court cannot find that "ineluctable inferences ... aris[ing] from the [statutes] ... compel such a finding." *Parks,* 51 F.3d at 1484 (citation and quotation omitted). The court therefore rules that the statutes at issue are not enforceable by private rights of action. Accordingly, Hawaii Motor has no statutory basis for suing directly under the HHLRA or the Defense Base Closure and Realignment Act of 1990.

C. *Hawaii Motor is Not Entitled to Non Statutory Review Because It Fails to Demonstrate Standing.*

 Hawaii Motor argues that the court may exercise jurisdiction under the doctrine of non-statutory judicial review.[5] Even assuming this doctrine is valid in the Ninth Circuit, non-statutory review is unavailable in the present action.[6] The doctrine of non-statutory judicial review applies to parties who satisfy constitutional standing requirements and who "have been injured by an act of a government official which is in excess of his express or implied powers." *Chamber of Commerce of the United States v. Reich,* 74 F.3d 1322, 1327 (D.C.Cir.1996). Because Hawaii Motor fails to demonstrate that it has standing to bring its claim, the court cannot judicially review the decision to transfer the Barbers Point property under the doctrine of non-statutory review.

Hawaii Motor has the burden of alleging and establishing facts that demonstrate standing. *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). To accomplish this, Hawaii Motor must prove three elements: (1) an "injury in fact" that is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complaint of"; and (3) the likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and quotations omitted). On the present record, Hawaii Motor has not met its burden of showing that its failure to obtain the Barbers Point property constitutes an "injury in fact" that this court can redress. *See id.*

The court held in its Order filed on September 20, 2000 that Hawaii Motor had

---

**5.** The court notes that the Amended Complaint does not allege jurisdiction under this doctrine. Hawaii Motor raises this issue for the first time in its Memorandum in Opposition to the United States' Motion to Dismiss.

**6.** The court does not decide the issue of whether nonstatutory right of review is recognized in the Ninth Circuit.

failed to demonstrate an "injury in fact" based on the record before the court at the time. *See* Order, at 13. Hawaii Motor has failed to come forward with any new evidence to demonstrate an "injury in fact" that this court can redress. In particular, Hawaii Motor has failed to establish that the United States contracted with or made any commitment to Hawaii Motor that conferred a legally protected interest in the Barbers Point property. Hawaii Motor's application to acquire the Barbers Point property does not create a legally protected interest that is concrete, particularized, actual, or imminent. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Without such an interest, the alleged harm to Hawaii Motor is merely a "generalized grievance." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing cannot be demonstrated on a generalized desire to ensure that the Executive Branch complies with federal law. *See Commonwealth of Massachusetts v. Mellon,* 262 U.S. 447, 487–89, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Hawaii Motor therefore is not entitled to non-statutory judicial review.

## V. *CONCLUSION.*

For the foregoing reasons the court GRANTS the United States' Motion to Dismiss with prejudice. The Clerk of the Court is directed to enter judgment for the United States and to close the files in this case.

IT IS SO ORDERED.