Serena DEWAKUKU, Plaintiff,

v.

Mel R. MARTINEZ, Secretary of Housing and Urban Development,[1] Defendant.

No. CIV.A. 98–00415–PCT.

United States District Court,
D. Arizona.

Sept. 17, 2002.

Veronika Fabian, Flagstaff, AZ, Samuel D. Gollis, Albuquerque, NM, for Plaintiff.

Mark B Stern, Charles W. Scarborough, U.S. Dept. of Justice, Washington, DC, James C. Hair, Jr., U.S. Atty's Office, Phoenix, AZ, for Defendant.

1. Pursuant to Fed. R. Civ. Pro. 25(d)(1) and 42 U.S.C. § 405(g), Mel R. Martinez was au- tomatically substituted as the Defendant when

*MEMORANDUM AND ORDER*

YOUNG, District Judge.[2]

## I. INTRODUCTION

The Plaintiff, Serena Dewakuku ("Dewakuku"), a member of the Hopi Indian tribe, sued the Secretary of Housing and Urban Development, ("HUD" or "the Secretary") for various damages associated with a grossly defective house sold to her by HUD. Specifically, Dewakuku claims HUD: (1) violated the Indian Housing Act of 1988 (codified at 42 U.S.C. §§ 1437aa–1437ff (1994), *repealed by* Native American Housing Assistance and Self Determination Act of 1996, Pub.L. No. 104–330 (1996)), and its implementing regulations through the construction of her substandard housing; (2) breached its obligations under the Annual Contributions Contract, which it owed Dewakuku as an intended third party beneficiary of that contract; and (3) violated the Administrative Procedure Act, ("APA"), 5 U.S.C. §§ 701–706 (1996), in failing to supervise the home's construction and enforce the standards under the Indian Housing Act. Both parties moved for summary judgment on all three claims.

This Court held that, pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1404a (1994), Congress had waived the Secretary's sovereign immunity from suit, and Dewakuku therefore had an implied right of action under the Indian Housing Act; further, this Court ruled that Dewakuku was an intended beneficiary of the Annual Contributions Contract and was thereby entitled to sue HUD for breach of contract under the Little Tucker Act, 28 U.S.C. § 1346 (1994), as a third party beneficiary. Accordingly, this Court granted Dewakuku's cross-motion for summary judgment with respect to the first two counts and awarded her declaratory and injunctive relief. The Court declined to address Dewakuku's APA claim because it deemed her requested relief in this count duplicative of the first two. *Dewakuku v. Cuomo*, 107 F.Supp.2d 1117 (D.Ariz.2000) ("*Dewakuku I* ").

The Court of Appeals for the Federal Circuit reversed. While that court agreed that the Secretary's immunity from suit was waived by the United States Housing Act of 1937, 42 U.S.C. § 1404a, it held that Dewakuku had no private right of action under the Indian Housing Act and was not a third party beneficiary of the Annual Contributions Contract. Noticing that this Court had not considered Dewakuku's claim under the APA, the Federal Circuit remanded the case so this Court could address Dewakuku's third claim. *Dewakuku v. Martinez*, 271 F.3d 1031 (Fed.Cir. 2001) ("*Dewakuku II* ").

As noted in *Dewakuku I*, the parties have agreed that this action could be finally decided on their cross-motions for summary judgment. *Dewakuku I*, 107 F.Supp.2d at 1119. Accordingly, this Court again considers Dewakuku's claim, although this time under the rubric of the APA.

## II. BACKGROUND

For a more detailed exposition of the factual background in this action and the history of the statutes involved, see this Court's previous opinion, *Dewakuku I*, 107 F.Supp.2d at 1118–1125.

This case arises from the provisions of the United States Housing Act, codified at 42 U.S.C. § 1437 (1994), which was passed in order to assist needy Americans in finding decent, safe, and sanitary housing. The original United States Housing Act authorized low-rent housing on Indian res-

he replaced Andrew M. Cuomo as Secretary of Housing and Urban Development.

2. Of the District of Massachusetts, sitting by designation.

ervations; subsequently, the Mutual Help Homeownership Program ("Mutual Help Program") was developed to meet the housing needs of low-income Indian families on Indian lands. In 1988, the Indian Housing Act provided statutory authority for the Mutual Help Program to be carried out by HUD. Pursuant to its authority, HUD issued implementing regulations for the Mutual Help Program. 24 C.F.R. § 905 (1991). Dewakuku purchased the home at issue in this litigation through the Mutual Help Program authorized by the Indian Housing Act.

Under the Mutual Help Program, Indians who are eligible and interested in buying a family home enter into a contract, called a "Mutual Help and Occupancy Agreement," 42 U.S.C. § 1437bb(e), with the relevant Indian housing authority for that area, in this case the Hopi Tribal Housing Authority ("Hopi Housing Authority"). The tribal authority establishes the rights and duties of the individual home buyers. The home buyer makes an initial contribution of $1,500 in land, cash, labor, or materials; the home is built by the tribal authority through subcontractors, and the family then enters into a lease-purchase agreement with the tribal authority for up to twenty-five years, with the home buyers paying all bills for utilities and maintenance as well as making monthly payments based on their income. *Id.* §§ 1437bb(e)(2)(A)(i), 1437bb(e)(3).

Dewakuku moved into her home in 1991. She alleges that because the Secretary breached his regulatory and statutory responsibilities, she has been consigned to live in a home that is in such poor condition and so poorly constructed that it has a malfunctioning electrical system, cracking walls and floors, a leaky roof, popping nails, and is both unsafe and overly expensive to heat in the winter. The Secretary, for his part, does not contest Dewakuku's assertions. Both parties concede that the

home is substandard, and was indeed "shoddy and inferior on the very day it was constructed." *Dewakuku I*, 107 F.Supp.2d at 1118. Given that this home was built through a program that was specifically designed to alleviate the problem of substandard housing on Indian reservations, the extremely poor construction of Dewakuku's home is a sad commentary on the efficacy of Congressional mandates. The legal question is, however, whether HUD must bear the cost of curing the egregious and inexcusable defects in this "home."

The Secretary admits Dewakuku's home is woefully substandard but insists that HUD is not responsible for these defects and that Dewakuku must instead pursue a claim against the Hopi Housing Authority. Dewakuku asks that the defects in her home be cured by HUD through either repair or reconstruction, a request that, on remand, arises only under the APA. Both parties have moved for summary judgment, and under Fed.R.Civ.P. 56(c) summary judgment can only be entered against a party who fails to show a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

### A. JURISDICTION AND STANDARD OF REVIEW

This Court exercises subject matter jurisdiction over Dewakuku's claims for declaratory and injunctive relief pursuant to the APA, 5 U.S.C. §§ 702, which waives sovereign immunity with respect to such claims, and the United States Housing Act, 42 U.S.C. § 1437. *Accord Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed.Cir.1994) (ruling that the APA provides jurisdiction and waiver of sovereign immunity for Suit by developer against HUD under the Housing Act); *Aujero v. CDA Todco, Inc.*, 756 F.2d

1374, 1375 (9th Cir.1985) (deciding case under the APA without ruling on the existence of an implied cause of action under the United States Housing Act).

■ The APA governs judicial review of agency actions and requires that a reviewing court hold unlawful and set aside agency action which, as matter of law, is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). If an agency makes a decision in an area that is "committed to agency discretion by law," no judicial review is allowed. 5 U.S.C. §§ 701(a)(2) and 702; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). If it is at issue in the case, the interpretation of a statute by the agency charged with its administration is granted substantial deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

### B. ANALYSIS

The Court must determine (a) if any agency "action" on the part of HUD took place; (b) if so, whether this action was committed to agency discretion or based on the agency's statutory interpretation; and (c) whether this action violated the APA as arbitrary, capricious, an abuse of discretion, or was otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Three factors are dispositive in answering these questions.

■ First, the Indian Housing Act gave HUD substantial oversight responsibilities over tribal authorities when building homes under the Mutual Help Program. Thus, HUD's failure properly to supervise the construction of Dewakuku's home by the Hopi Housing Authority can fairly be said to represent "agency action" within the meaning of 5 U.S.C. § 551(13) (definition of agency action includes "failure to act") and 5 U.S.C. § 702.

Second, as a subchapter to the United States Housing Act, the Indian Housing Act requires that all low income housing built under the Mutual Help program be "decent, safe, and sanitary." 42 U.S.C. §§ 1437a(b)(1). The terms "decent, safe, and sanitary" as applied to housing are clear on their face and not in need of any interpretation by the agency. Upon the undisputed record before this Court, Dewakuku's home did not meet this standard and HUD, remiss in its oversight duties, did not act in "accordance with law" in allowing such a home to be built under its direct supervision. Moreover, it arguably abused its discretion in approving the construction in the first place.

Third, the duty to build standard housing was absolute under the Indian Housing Act. It was only the *method* of doing so that was committed to agency discretion. All parties concede that this duty was not met in the case of Dewakuku's home. These factors are explored in more detail below.

### 1. Agency "Action"

HUD maintains that responsibility for the state of Dewakuku's home ultimately rests with the Hopi Housing Authority. While at first glance this argument makes sense, a more probing analysis leads the Court to reject it. HUD's supervisory powers over tribal authorities when implementing the Mutual Help Program are substantial; indeed, they can be properly termed as near total control. Nothing could have been done on this project without HUD's explicit approval.

Tribal housing authorities have never been seen as wholly independent entities under the Mutual Help Program in the realm of home construction. To ensure that the proposed low-income housing met applicable standards, Congress, when it passed the Indian Housing Act, anticipated

that HUD would provide the requisite technical and supervisory assistance. H.R.Rep. No. 100–604 (1988), reprinted in 1988 U.S.C.C.A.N. 791, 796 ("House Report"). More concretely, any analysis of the Indian Housing Act's implementing regulations makes clear that HUD maintained oversight over virtually everything the Hopi Housing Authority did regarding the construction of housing under the Mutual Help Program—from site selection, 24 C.F.R. § 905.230 (1991) and production method, 24 C.F.R. § 905.215(a) (1991), to the design, 24 C.F.R. § 905.250 (1991), and the development budget, 24 C.F.R. § 905.255(a)(2) (1991).

HUD supervised the construction contract bidding process. 24 C.F.R. § 905.215(a)(2) (1991). Further, prior to beginning construction, the Indian housing agency, here the Hopi Housing Authority, was required to submit a development program to HUD. 24 C.F.R. § 905.225(a) (1991). Upon receipt of this proposal, HUD was to review the program and "advise the [Hopi Housing Authority] of any deficiencies and ... [to] provide the [Hopi Housing Authority] with the opportunity to make corrections." 24 C.F.R. § 905.225(b) (1991). In sum, assuming the Hopi Housing Authority's plan met all applicable standards, construction on a home like Dewakuku's could never have begun without HUD's prior approval. These standards included the use of "structurally sound" building materials and "cost-effective energy," 42 U.S.C. § 1437bb(c)(3)(B); House Report at 794, which both parties concede Dewakuku's home lacked. HUD makes no claim that the Hopi Housing Authority did not comply fully with its preconstruction submissions and proposal requirements. Bluntly, therefore, given what Dewakuku ultimately received, the HUD-approved plan was wholly insufficient. HUD should never have approved the Hopi Housing Authority's plan and allowed construction on Dewakuku's home

to proceed without modifications to the proposal.

HUD's oversight capacities did not stop there. HUD had a substantial role in overseeing post-construction inspection and certification. The actual post-construction inspections had to be performed by the Hopi Housing Authority under the Indian Housing Act, but the frequency of the inspections and the inspector employed to conduct them were subject to HUD's approval in order to "assure completion of quality housing." 24 C.F.R. § 905.260(d). HUD was obligated to conduct periodic construction site inspections to monitor Indian housing authorities. 24 C.F.R. § 905.260(e) (1991). Final approval of the project could only be made by HUD and no funds could be released to any subcontractor without HUD's approval of the Certificate of Completion. 24 C.F.R. § 905.260(f)(2). HUD not only vetted each project and provided the necessary financing, but also was required to oversee inspection and give the final approval for each home.

Finally, the implementing regulations of the Indian Housing Act anticipated costs related to the correction of design and construction defects and gave HUD the power to approve them. 24 C.F.R. § 905.270. The tribal housing authority was required to pursue the responsible parties prior to seeking HUD's assistance, but after such reasonable efforts HUD was allowed in its discretion to amend the Contributions Contract or development budget to provide the money needed to make corrections or repairs on completed homes. 24 C.F.R. § 905.270(a)-(d). HUD was therefore, under the Indian Housing Act, a necessary participant in the corrections process after home construction was completed. All of these supervisory responsibilities went conspicuously unmet by HUD in this case, and this failure constitutes

agency "inaction" sufficient for Dewakuku to bring a claim for damages under the APA. 5 U.S.C. § 551(13).

Besides its alleged failure to meet its supervisory responsibilities, a more fundamental reality belies HUD's position. HUD, in suggesting that Dewakuku seek relief from the Hopi Housing Authority, implies that it was this entity's "action" or inaction that caused her to be given such a substandard dwelling. This argument would have some force if not for one salient fact that the implementing regulations above illumine; the Hopi Housing Authority is not an independent body on its own, but merely an arm of HUD. The Hopi Housing Authority is not, in any sense, its own agency or a non-profit organization with access to contributions, nor is it a private, for-profit corporation with capital sufficient to cure the defects in Dewakuku's home. It was created solely to administer the public housing monies received from HUD for Hopi lands. It is an offshoot of HUD—HUD's administrator of public housing construction on Hopi reservations, and nothing more.[3] HUD funds are the sole source of funding for the Hopi Housing Authority, indeed, for *any* Indian housing authority under the Indian Housing Act. Asking Dewakuku to bring an action under the APA against the Hopi Housing Authority to repair the defects in her home is needlessly circular given that the funds necessary to satisfy the judgment against the Hopi Housing Authority *must* come from HUD. HUD is essentially asking Dewakuku to sue an empty shell in order to avoid direct liability itself. The Hopi Housing Authority may be responsible for actually doing the work through subcontractors to cure the defects in Dewakuku's home under the Indian Housing Act, but HUD will have to approve the design, the workers, and the materials used, as well as pay the costs. HUD, or more correctly the Secretary, is the proper defendant in this suit, and HUD is the true "actor" in this case. Its action or inaction is properly termed "agency action" under the definitional sections of the APA.

## 2. Committed to Agency Discretion by Law

■ The Supreme Court has stated unambiguously that the exception to judicial review for agency actions committed to agency discretion by law is "very narrow ... [and is] applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park*, 401 U.S. at 410, 91 S.Ct. 814 (quoting from legislative history of APA). Here, there is law to apply and the Housing Act does not provide broad discretion to HUD when it mandates that all low income housing built for those such as Dewakuku who qualify for the Mutual Help Program be "decent, safe, and sani-

---

3. In its previous opinion, the Court noted:

Although technically an exercise of tribal sovereignty, the Indian Housing Authority is, in reality, a creature of HUD. HUD's regulations "permit" a tribal government to create an Indian Housing Authority. *See* 24 C.F.R. §§ 905.108(a), 905.109 (1990). In every instance where a tribal government creates a housing authority, it must follow the exact format prescribed by HUD. *See* 24 C.F.R. § 905.109. Furthermore, HUD will not enter into a contract with an Indian Housing Authority unless the tribal ordinance creating the housing authority is submitted to and approved by it. *See id.* Moreover, the ordinance must be submitted with evidence that the tribal government's enactment was either approved by the Secretary of the Interior or that the Secretary of the Interior has reviewed the ordinance and does not object to it. *See id.* The Model Tribal Ordinance, first conceived by HUD in 1962, sets out the functions of the Indian Housing Authority and lists its primary purpose as the eradication of unsafe and unsanitary housing conditions on the reservation.

*Dewakuku I*, 107 F.Supp.2d at 1121–1122.

tary." 42 U.S.C. §§ 1437a(b)(1), 1437aa(a) (1994). "The definition of 'low-income housing' is 'decent, safe, and sanitary dwellings assisted under ... chapter [8].' 42 U.S.C. § 1437a(b) (1994)." *Dewakuku II*, 271 F.3d at 1039.

■ Another court recently held that the phrase "decent, safe, and sanitary," as applied in the context of assessing Section 8 housing conditions, was not "too subjective" to preclude a civil claim under the False Claims Act, because the phrase "has a commonsense core of meaning and is capable, without additional definition, of being understood by a factfinder called upon to evaluate whether a certification of compliance with this standard is objectively true or false." *United States v. Southland Management Corp.*, 288 F.3d 665, 688 (5th Cir.2002); *applying* 31 U.S.C. § 3729(a) and 24 C.F.R. § 881.201. Similarly, this Court holds that upon the present record Dewakuku's home was not, as matter of law, "decent, safe and sanitary" under any feasible definition of these terms. Although an assessment as to whether property qualifies as decent, safe, and sanitary obviously involves a certain degree of subjective judgment, "there are cases in which property would not qualify as 'decent, safe and sanitary' under any

conceivable definition of those terms." *United States v. Southland Management Corp.*, 95 F.Supp.2d 629, 635 (S.D.Miss. 2000); *see also United States v. Intervest Corp.*, 67 F.Supp.2d 637 (S.D.Miss.1999). Dewakuku's home as constructed violates the United States Housing Act under any possible interpretation of the phrase "decent, safe and sanitary," and the determination of what constitutes "decent, safe and sanitary" housing is not committed to agency discretion by law.

### 3. Not in Accordance With Law

As HUD has wrongfully allowed the Hopi Housing Authority to construct a deficient home through a failure to meet its pre- and post-construction supervisory responsibilities, it has acted "not in accordance with law" under 5 U.S.C. § 706(2). It has violated the Indian Housing Act, an explicitly-worded statute that requires all housing built under the Mutual Help Program to be "decent, safe and sanitary." "Plaintiffs who present proof that an agency has violated a statute have perforce shown that it has acted 'not in accordance with law' and 'in excess of statutory jurisdiction, authority, or limitation.'" *J.L. v. Social Sec. Adm'n*, 971 F.2d 260, 267–68 (9th Cir.1992).[4]

---

4. The Secretary's actions in this case may also have constituted an abuse of his discretion. While the "abuse of discretion" standard in cases under the APA is an extremely deferential one, it is not without some force. An agency decision is entitled to substantial deference and must be upheld if it rests on a rational basis. *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir.1995). It is well-settled that a reviewing court may *not* substitute its judgment for that of the agency. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). The agency, however, is still required to articulate a rational connection between the facts and its conclusions. *See Oregon Natural Resources Council v. Lowe*, 109 F.3d 521, 526 (9th Cir.1997). This standard is designed to fulfill the "demand

that courts ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." *Marsh*, 490 U.S. at 378, 109 S.Ct. 1851, (internal quotations omitted).

Here, HUD should never have allowed such a decrepit home to be built by the Hopi Housing Authority on its watch. It had discretion in choosing the proposal and approving its design but it appears—at least based on the result—that it did not properly exercise that discretion. Moreover, the Secretary was charged with the duty of reviewing the program and "advis[ing] the [Hopi Housing Authority] of any deficiencies and ... providing the [Hopi Housing Authority] with the opportunity to make corrections." 24 C.F.R. § 905.255(b) (1991), and it would seem that he utterly failed in this duty. HUD's decision to allow construction to commence under the

## IV. CONCLUSION

Based on the foregoing, this Court rules that HUD failed properly to supervise the Hopi Housing Authority and provide Dewakuku with a "decent, safe and sanitary" home as it was required to do under the United States Housing Act, 42 U.S.C. §§ 1437a(b)(1) and 1437aa(a) (1994), and in so doing, violated the APA, 5 U.S.C. § 706(2)(A), by acting "not in accordance with law."

Accordingly, the Secretary is hereby ordered to cure the defects in the design and construction of Dewakuku's home to the extent there are funds available under 24 C.F.R. § 905.270(a)-(d), or to the extent the Secretary has other unobligated funds in HUD's budget, or to the amount of $10,000.00, whichever sum shall be the greatest.

SO ORDERED.

plan it reviewed is erroneous given the end result. Therefore, even if the Indian Housing Act was not directly violated, it appears likely that HUD "abused its discretion" under 5 U.S.C. § 706(2)(A). This record, however, does not provide sufficient facts on which to so conclude, and so the Court reserves its judgment on the issue.